Clinton v. Howard.

———•••———

EDWIN J. CLINTON *vs.* SAMUEL A. HOWARD AND ANOTHER.

An allegation in a declaration for damage from an object placed upon a highway, that the plaintiff's horse was perfectly gentle and was frightened by it,

is equivalent to an allegation that it was an object calculated to frighten a horse of ordinary gentleness.

An object on a highway calculated to frighten a horse of ordinary gentleness may be, on that ground, a nuisance.

Such an object is not distinguishable in law from an obstruction which a traveler drives against.

A witness, testifying from his personal observation and experience, may give his opinion whether a certain object on a highway would be likely' to make an ordinarily gentle horse shy.

And held that the following questions put to the plaintiff by his counsel, and his answers to them, were admissible: "What objects usually make horses shy according to your experience?" *Ans.* "I think anything new upon the road." "Was or was not the pile of stones in question a new object to your horse?" *Ans.* "I think it was."

Also the following questions: "At what places has your horse gone near to moving trains of cars?" and "How was your horse affected by the road-roller?"

The plaintiff could not only show that the gentleness of his horse had been subjected to such tests, but could also show any circumstances of time, place, or position, which tended to make the tests more decisive.

The plaintiff claimed that a part of his damage was in the diminished market value of his horse, from the knowledge of the public that he had been frightened and run away. Held that he might ask a witness, "How extensively is it known in the neighborhood that the horse has run away?"

The jury being for a long time unable to agree on a verdict the court sent them back to a still further consideration of the case, stating among other things as reasons for their disposing of the case, that the trial had been a long one, and had made the state a large expense. Held that it could not fairly be presumed that any juror was misled as to his duty by the remark, and that it was not a reason for granting a new trial after a verdict for the plaintiff.

TRESPASS ON THE CASE for an injury from a nuisance placed by the defendants in a public highway; brought to the Court of Common Pleas of New Haven County.

The declaration alleged that on the 2d day of September, 1874, the plaintiff was driving a horse and wagon along a certain highway in the town of East Haven, leading from East Haven to North Haven, in the vicinity of the residence of Daniel Hemingway, and that his horse was perfectly gentle, and had previously been gentle, and free from the vice of shying and running away. That on or about the first day of September, 1874, the defendants had wrongfully placed in said highway, about opposite said residence of Daniel Hemingway, a large pile of stones, which reached from the west side of the worked path of the highway towards and upon the traveled path the distance of about twelve and one-half feet, and

seriously encumbered the track on the highway which wagons had been there accustomed to take; that the pile of stones was about four feet high in the center, and about eight feet in width; that the highway at that point, from gutter to gutter, was only twenty-eight feet, and that the pile of stones was a great obstruction to public travel, a great nuisance, and a source of danger to people and horses traveling on the highway at that point; and that the defendants carelessly and negligently, on the day last aforesaid, placed said pile of stones in said highway and carelessly and negligently continued the same therein until after the occurrences hereinafter described. That on said 2d day of September, as the plaintiff was so driving along said highway, he was using due and reasonable care, but that as his horse came up to and near said pile of stones, he took fright thereat and rapidly shied off and thereby drew the plaintiff's wagon rapidly and violently against the rear part of a certain other wagon, which was then and there being driven by one George W. Clinton, in a direction opposite to that of the plaintiff's wagon.

The declaration then proceeded to allege the upsetting and breaking of the plaintiff's wagon, and an injury to his person, and the running away and laming of his horse, and the loss in the market value of the horse by reason of his having thus run away.

The case was tried to the jury on the general issue, before *Robinson, J.*

Upon the trial the plaintiff claimed, and offered evidence to prove, that on the 2d day of September, 1874, he was driving from his residence in North Haven, southerly towards New Haven, having with him in his wagon his wife and child; that the defendants had upon the same day, and prior to the accident, placed a large pile of cobble stones, about twelve feet in diameter and three and a half feet high, upon the side of and extending into the traveled part of the highway, nearly in front of the residence of Daniel Hemingway; that the highway was much frequented and traveled from curb to curb, the travel. going south usually taking the west side, and the travel going north the east side, and that the pile of stones

lay in that part of the highway which the travel going south was accustomed to take; and that the pile of stones was calculated to frighten a horse of ordinary gentleness; that as his horse came up to and near the pile of stones he suddenly took fright thereat and rapidly shied off, easterly and southerly, from the pile of stones, and thereby drew the plaintiff's wagon rapidly and violently against the rear part of another wagon, driven by George W. Clinton, in an opposite direction, which as the plaintiff claimed had nearly passed the pile of stones as his horse came up to it; that in consequence of such collision the forward axle of his wagon was broken, and the left side fore-wheel broken off and parted from the wagon, which was thereby partly upset, throwing out his wife and child; and that by reason of the crash caused by the collision and upsetting, the horse became more frightened and ran rapidly along the highway, throwing out and injuring the plaintiff after the horse had gone eight or nine rods. The plaintiff further claimed that his horse was gentle and not accustomed to shy, and that he himself was in the exercise of due and reasonable care at the time of the accident, and that his horse was going at a slow trot at the time, and that he slackened his speed as he approached the pile of stones.

The defendants claimed, and offered evidence to prove, that the pile of stones was intended for and was used the next day in the construction of a concrete walk upon the private premises of Mr. Hemingway, the adjoining proprietor, and that the stones were left in the highway by their servants only a short time before the accident; that such placing of the stones was much more convenient and economical for them than to place them elsewhere, and that such use of the highway by the defendants, they having contracted with Hemingway for the construction of the concrete walk, was reasonable and proper; that the pile of stones was not calculated to frighten horses of ordinary gentleness; and that, at the time of the accident, the plaintiff was driving at the rate of a mile in four minutes, and did not slacken his speed as he approached the pile of stones and the passing wagon, which was about ten feet distant from the stones, and nearly abreast thereof.

It was admitted that there was a clear space for the passage of travelers of at least twenty-one feet and eight inches between the pile of stones and the easterly side of the highway, including the gutter, (which though not much used, was yet available for travel), but that the whole of this space was not at the time of the accident available to the plaintiff, owing to the partial occupation of the same by the other wagon, and that the plaintiff saw the pile of stones and approaching wagon when he was at least one hundred and twelve feet distant therefrom.

The plaintiff further claimed, and offered evidence to prove, that there was ample room for him to pass between the pile of stones and the other wagon had his horse not been frightened, and that there was ample room upon the adjoining premises of Hemingway to deposit the stones, and that they could have been used from his premises as conveniently as from the highway, and that the use of the highway for that purpose was not necessary, reasonable, or proper, but was an act of gross and culpable negligence on the part of the defendants.

For the purpose of showing that he was in the exercise of due care, the plaintiff testified, without objection, that the horse he was then driving was a very gentle horse and not accustomed to shy, and that he had driven the horse many times within a rod of moving trains of cars, and that the horse would not be frightened at them. For the purpose of showing still further the character of the horse, he was then asked by his counsel at what places the horse had so gone near moving trains; to which inquiry the defendants objected as irrelevant. The court thereupon inquired of the plaintiff's counsel, whether the places inquired about were so situated as to increase the likelihood of the horse being frightened, and also if they were well known or could be so described as that the jury (most of whom were from New Haven and adjacent towns) would be able to know what they were; to which the counsel replied, that the places were well known and in the city of New Haven; and thereupon the court permitted the question to be put, and received the answer, that

the places were the crossings at Grand street and East Chapel street in the city of New Haven; to which the defendants excepted.

On the cross-examination the plaintiff was asked whether he had not seen piles of stones similar to the one in question, while driving with this horse in the streets of New Haven, and whether or not his horse had been accustomed to shy at them. In answering these questions the plaintiff said, among other things, that he had driven the horse by the steam road-roller while it was at work in the construction of street pavements in the city; and it was conceded that the roller was an object calculated to frighten horses of ordinary gentleness. On his re-direct examination, for the purpose of showing the gentle character of the horse, he was asked: "How was your horse affected by the road-roller?" to which question the defendant objected, but the court received the evidence.

The plaintiff testified that he had been accustomed to the use of horses all his life and had owned a great many. For the purpose of showing that the pile of stones was a dangerous object and calculated to make horses of ordinary gentleness shy, he was asked by his counsel, "What objects are accustomed to cause horses to shy according to your experience?" to which the defendants objected, as calling for a mere expression of opinion, and as irrelevant; but the court overruled the objection, and the witness answered: "I think anything new put in the road would cause almost any horse to shy." He was next asked: "How would a large pile of stones like this one affect a horse?" Objection was made that no foundation had been shown for the opinion of the witness on this point, since it had not appeared that the witness had had any experience with a horse shying at a pile of stones, and the question was withdrawn without a ruling, and the witness was then asked "if he had ever had a horse to shy at a pile of stones;" to which inquiry the defendants objected as irrelevant, but the court overruled the objection. The witness answered, that he did not recollect any instance before this one.

He was then next asked, for the purpose of showing that

the pile of stones caused his horse to shy: " Was or was not the pile of stones in the road that you saw, (referring to the time of the accident,) a new object to your horse, to the best of your knowledge ?" to which the defendants objected as irrelevant, but the court overruled the objection, and the witness answered: " I think it was a new object."

For the purpose of showing the dangerous character of the pile of stones in the traveled part of the highway, and that they were of a character to make horses of ordinary gentleness shy, the plaintiff inquired of George W. Clinton, who had previously testified that he had always been accustomed to the use of horses, and had driven gentle horses that shied, and that he was present at the time of the accident and saw and measured the pile of stones, " whether an object like this pile of stones would be likely to make an ordinarily gentle horse shy," to the substance of which inquiry the defendants objected as irrelevant and as calling for the expression of an opinion, but the court permitted the question. The same question was afterwards put to other witnesses. All these witnesses testified that they were accustomed to horses. They also all testified that they had examined the pile of stones.

The plaintiff claimed that the market value of his horse was impaired by the mere fact that it had run away, although without its fault; and also that he had sold the horse since the accident for a less price than he could have obtained for him before. A witness for the plaintiff testified upon his direct examination that such a fright would affect the market value of the horse. The defendants' counsel upon the cross-examination inquired, against the plaintiff's objection, " whether, if the horse was bought by one who did not know that it had run away, its value would be affected." To which the witness answered: " I don't know as it would, if they didn't know it. There was nothing in the character or appearance of the horse to show it, though there were scars on the horse's legs, when I saw Clinton drive it, after the accident." The plaintiff's counsel, upon the re-direct examination, inquired of the same witness, " how extensively it

was known in the neighborhood that the horse had run away?" to which inquiry the defendants objected as calling for hearsay, and as being beyond the knowledge of the witness; but the court ruled that the witness might state his knowledge on the subject if he had any.; and the witness answered, "It was known about everywhere."

The cause was given to the jury on the 28th of January, at about three in the afternoon, and by them considered till twenty minutes after five. On the following day the jury met at ten o'clock, and about half past twelve came in and announced to the court that they were unable to agree upon a verdict. The judge then stated that, in all human probability, the cause would have to be some time decided by a jury, and that the present jury were as competent to decide it as any could be; that although it was the duty of each juror to decide the case upon his individual oath and conscience, and not to be influenced by any other considerations than the law and the evidence, yet as the trial had already occupied the court more than a week and had been a very expensive one— had already cost the State alone about $600, in the expenses of the court, to say nothing of the outlay of the parties—he felt it to be his duty, notwithstanding they had already deliberated so long, to request them to give a further consideration to the case. He then, at the request of the jury, read to them a part of his charge with regard to the necessary and reasonable use of the highway, and sent them back to their room. The jury, at about four o'clock in the afternoon of that day, returned a verdict for the plaintiff.

The defendants moved for a new trial for error in the rulings and instructions of the court, and also filed a motion in arrest of judgment for the insufficiency of the declaration, which motion the court reserved, with the other, for the advice of this court.

*J. T. Platt*, in support of the motions.

*First.* Upon the motion in arrest of judgment. This being an action on the case for special injuries occasioned by an alleged public nuisance placed in a highway by the

defendants, it is necessary for the plaintiff to state in his declaration—1st. Facts which in law constitute a nuisance. 2d. Special injuries, or injuries beyond those suffered by the public in general. 3d. That such special injuries are the proximate result of the nuisance described.

1. The facts constituting the alleged nuisance are stated in the declaration as follows: "That the defendants wrong-fully placed in said highway a large pile of stones, which reached from the west side of the worked path of said street towards and upon the traveled path of said street, the distance of about twelve feet, and seriously encumbered the track in said highway; that said pile of stones was about four feet high in the center, and about eight feet in width; and that said highway at that point, from gutter to gutter, was only twenty-eight feet." After describing with so much mi-nuteness of detail the size and location of the pile of stones, the pleader proceeds to further characterize it by general words, and says that it "was then and there a great obstruction to public travel, a great nuisance, and a source of danger to people and horses traveling on the highway at that point." The offense set forth is an actual obstruction of the traveled part of the highway, and the general words used cannot be extended by construction so as to include an offense of a different kind. "It is a general rule of construction that when a particular class is spoken of, and general words follow, the class first mentioned is to be taken as the most comprehensive, and the general words treated as referring to matters *ejusdem generis* with such class. *Lyndon* v. *Standbridge*, 2 Hurl. & Nor., 51; Broom's Legal Maxims, 580; Mansell on Demurrer, 24. "Under a declaration stating a nuisance of one kind, it is not permitted to prove a nuisance of a character essentially different." Addison on Torts, 199, 953; *O'Brien* v. *City of St. Paul*, 18 Minn., 180; *Fitzsimons* v. *Inglis*, 5 Taunt., 534.

2. The declaration must show that the plaintiff has suffered special injuries, or injuries beyond those suffered by the public in general. Angell on Highw., § 285; Addison on Torts, 194.

3. It must appear from the declaration that the special injuries alleged are the proximate result of the particular nuisance alleged. The declaration, in stating the special injuries, says, " as the plaintiff's horse came up to and near said pile of stones, he took fright thereat, and rapidly shied off, and thereby drew the plaintiff's wagon violently against the rear part of a certain other wagon, &c." There is no allegation of any contact of the plaintiff's horse or wagon with the pile of stones ; on the contrary, the possibility of such an event is negatived by the language used. The alleged nuisance is a pile of stones which it is stated encumbered the highway. The special injuries alleged arose from the contact of the plaintiff's wagon with another wagon passing in the opposite direction. If the declaration had alleged an actual contact with the pile of stones, and an injury occurring thereby, a good cause of action would be shown. But instead of doing this, it excludes the possibility of such a contact. The defendant fails to connect the injury he has suffered with the alleged violation of duty by the defendants, and therefore the declaration shows no cause of action. *Sharp* v. *Powell*, L. Reps., 7 Com. Pleas, 253. It is true that it is held that objects upon the highway, "if, in their general operation, calculated to frighten horses of ordinary gentleness," are nuisances. But there is no allegation that this nuisance was of that character, and it is clear, both from principle and authority, that such an allegation is necessary. In the case of *House* v. *Metcalf*, 27 Conn., 631, the declaration alleged that the water wheel, " when in motion, was calculated to frighten horses." SANFORD, J., giving the opinion, says (p. 638) : " The fact stated as the foundation of the defendant's liability is, that the wheel was calculated to frighten horses passing by the mill along the road. That was an essential allegation." In every action for a nuisance of this kind, the *gravamen* of the charge is that the object was calculated to frighten horses of ordinary gentleness. *Dimock* v. *Suffield*, supra; *Knight* v. *Goodyear Glove Manf. Co.*, 38 Conn., 438 ; *Young* v. *City of New Haven*, 39 id., 435 ; *Foshay* v. *Glen Haven*, 25 Wis., 288.

*Second.* Upon the motion for a new trial.

1. The court erred in allowing the question to be put to a witness, " whether an object like this pile of stones would be likely to make an ordinarily gentle horse shy." The testimony was irrelevant, there being no allegation in the declaration that it was of a character to make horses of ordinary gentleness shy. And the question called for no facts within the knowledge of the witness ; but for his mere opinions upon a subject requiring no science or skill, and in regard to which the jury were entirely competent to judge. *Morris* v. *Town of East Haven*, 41 Conn., 252 ; *Fraser* v. *Tupper*, 29 Verm., 409 ; *Crane* v. *Northfield*, 33 id., 124 ; *Blanc* v. *Klumpke*, 29 Cal., 157 ; *Hutchinson* v. *Methuen*, 1 Allen, 33 ; *Patterson* v. *Colebrook*, 29 N. Hamp., 94 ; *Ramadge* v. *Ryan*, 9 Bing., 333.

2. The court erred in allowing the plaintiff's counsel to enquire of him, " at what places the horse had gone near moving trains of cars." Also the question, " How was your horse affected by the road-roller ? " Both of these questions were wholly irrelevant.

3. The court erred in allowing the following questions to be put to the plaintiff : " What objects are accustomed to make horses shy, according to your experience ? " " State whether or not the pile of stones on the road that you saw, was or was not a new object to your horse, to the best of your knowledge." The first question called for an opinion merely, and both were irrelevant.

4. The court erred in allowing the inquiry, " How extensively was it known in the neighborhood that the horse had run away ? " This question called for nothing but hearsay and speculation, and ought to have been excluded.

5. The remarks made by the court to the jury in regard to the cost of the trial to the State were improper, as tending to lead some of the jurors to think it their duty to consent to a verdict that they disapproved, if a verdict could not be obtained in any other way.

*Alling*, contra.

PARDEE, J.   The defendants move in arrest of judgment for insufficiencies in the declaration upon three points: namely, that it does not state facts which in law constitute a nuisance; that it does not show that the plaintiff has suffered special injuries; and that it does not appear from the declaration that the special injuries alleged are the proximate result of the particular nuisance complained of.

The pleader alleges in the declaration that on a day named the plaintiff was driving his horse harnessed to a wagon along a certain highway; that the horse was perfectly gentle and had previously been free from the vice of shying and running away; that the defendants had theretofore placed a pile of stones, eight feet wide and four feet high, upon a part of the traveled path of the highway; that these stones were then and there a great obstruction to public travel, a great nuisance and a source of danger to people and horses traveling on the highway at that place; that as the horse of the plaintiff came up to and near the pile, he was frightened by it, and rapidly shied off and away from it, and thereby drew the plaintiff's wagon rapidly and violently against another wagon, whereby his own was broken and himself thrown upon the ground and his horse injured.

The defendants say that the indispensable allegation that the pile was an object calculated to frighten horses of ordinary gentleness is not to be found herein; but we must hold that by a fair and reasonable intendment, its full equivalent is contained in the allegation that, as a matter of fact, it did frighten a perfectly gentle horse.   That such an object within the limits of a highway may be a nuisance this court has determined in *Dimock* v. *Town of Suffield*, 30 Conn., 129, and *Ayer* v. *City of Norwich*, 39 Conn., 376, and that independently of any collision with it.   In the latter case the court said (p. 381):—"If I strike a horse and cause him to run, whereby persons in the carriage are injured, I am liable in trespass for all the damage.   If by my negligence I frighten him and thereby cause injury, I am liable in case. · If a town or other corporation by its negligence produces the same result, why should it not be liable?   We must confess we are

unable to discover any good reason for holding towns liable for injuries caused by collision and not liable for injuries caused by fright. The cause and effect in each case being the same, the manner and detail are unimportant."

Again, it is said that the declaration does not show that the plaintiff has suffered special injuries, or injuries beyond those suffered by the public in general. An individual who receives bodily hurt or suffers a damage to his horse or carriage in consequence of a direct collision with an obstruction in the highway, is specially damnified and may maintain an action against the author of the obstruction; and it is judicially settled that injuries which are the proximate result of frightening a horse by and away from an object in the highway, are not in law to be distinguished from injuries occasioned by actual collision with it, there being the proper allegations in the declaration.

Upon the motion for a new trial the defendants claim that the court erred in allowing the following question to be put to George W. Clinton, namely, "Whether an object like this pile of stones would be likely to make an ordinarily gentle horse shy."

While it is the general rule that the opinions of witnesses are not evidence, there are certain classes of exceptions to it, in which such opinions are admissible in connection with facts testified to, on which they are founded. Certain instances of such exceptions are noticed in the following decisions made by this court. In *Porter* v. *Pequonnoc Manufacturing Co.*, 17 Conn., 249, the question was whether a certain dam was capable of sustaining the water accumulated by it suddenly in time of a freshet. Upon that point the court received the opinions of witnesses who had no peculiar skill in the mode of constructing dams, but who were acquainted with the stream and who knew the height of the dam and depth of the pond. The court said: "The judgment or opinion of these witnesses as practical and observing men, was sought on this point, on the facts within their knowledge and to which they testified. They had acquired by their personal observation a knowledge of the character of the stream and also of the dam, and were

therefore peculiarly qualified to determine whether the latter was sufficiently strong to withstand the former. The opinions of such persons upon a question of this description, although possessing no peculiar skill on the subject, would ordinarily be more satisfactory to the minds of the triers than those of scientific men who were personally unacquainted with the facts in the case; and to preclude them from giving their opinion on the subject, in connection with the facts testified to by them, would be to close an ordinary and important avenue to the truth.   \*   \*   \*   On such a question the judgment of ordinary persons having an opportunity of personal observation and testifying to the facts derived from that observation, was equally admissible, whatever comparative weight their opinions might be entitled to, of which it would be for the jury to judge. It was a question of common sense as well as of science." In *Dunham's Appeal from Probate*, 27 Conn., 192, this court said: " We never allow the mere opinion of the witness to go to the jury if objected to, unless the witness is an expert and testifies as such, where the jury from want of experience or observation are unable to draw proper inferences from facts proved. But where a witness speaks from his personal knowledge, and, after stating the facts, adds his opinion upon them, or .in a certain class of cases gives his opinion without detailing the facts on which it is founded, his testimony is received as founded, not on his judgment, but on his knowledge.   \*   \*   \*   \*   So a witness may state that a certain road is or is not in repair, or that a certain bridge is sound and safe or otherwise, or that a farm or horse is worth so much, without going into the particular facts on which he founds his opinion, these facts being known to him personally. He only states the result of his own observation and knowledge."

The case called upon the plaintiff to satisfy the triers that the pile of stones was calculated to frighten horses of ordinary gentleness. The witness was accustomed to the use of horses; he knew their characteristics; he had observed the effect produced upon them by the sight of piles of stones and other similar objects; his knowledge based upon experience and

observation, while not in the highest sense professional or scientific, yet was of the kind and degree which all jurors cannot be presumed to have; he had seen the pile of stones in question; he was present at the time and place of the accident and was an eye-witness of the fact that the stones did frighten the horse and put him suddenly beyond the control of the plaintiff, thereby bringing his wagon in contact with an obstruction and directly producing the injury complained of.

Having testified to his knowledge upon these points and having given the dimensions and location of the pile of stones in reference to the traveled road-way, we think that the reasoning which permits unskilled persons first to state facts within their knowledge and then to base thereon an opinion as to the mental soundness of an individual, as to the sufficiency of a dam to withstand the pressure of the water which it has detained, as to the safety of a highway, and as to the soundness and strength of a bridge, will permit this witness to give an opinion based upon his knowledge of facts, as to whether this pile of stones was calculated to frighten gentle horses. It would be difficult, if not impossible, to embody in words, so as to be fully understood by the triers, a description of all the appearances which make a particular pile of stones a source of terror to gentle horses unaccustomed to the sight of such an object. The fright is the result of a combination of form, color and relative position, which would elude the effort of any witness clearly and fully to describe. Knowledge of the reasons why one object arouses the instinct of fear in a horse and another does not, and why the pile of stones in question should be put in one class or the other, is not presumptively within the knowledge of all jurors. To give to a juror who has neither had experience nor made observations upon the point, the dimensions of an object, and compel him to find therefrom alone that it would or would not frighten gentle horses, is to close other ordinary and important avenues to the truth.

Again, it is said that the court erred in permitting the plaintiff to answer the following questions: 1st, " What objects usually make horses shy according to your experience?"

to which he answered, "I think anything new put in the road would cause almost any horse to shy." 2d, "State whether or not the pile of stones on the road, that you saw, (referring to the time of the accident,) was or was not a new object to your horse, to the best of your knowledge;" to which he answered, "I think it was a new object." These questions, in form, called for answers founded upon knowledge, and were in this respect unobjectionable. The information sought for bore upon the issue as it tended to prove the specific reason why the pile of stones became the source of the fright. In so far as the answer to the first question has in it an element of opinion, it is admissible for reasons herein before given. The plaintiff had testified that he had been accustomed to the use of horses all his life and had owned a great many, and that he was driving the horse at the time of the accident, and he described his conduct on that occasion. From knowledge upon all these points thus gained he adds that the fright resulted from the fact that the object was new to the sight of his horse.

Again, it is said that the court erred in allowing the plaintiff to state "at what places his horse had come near moving trains of cars;" and in allowing him to answer the question, "How was your horse affected by the road-roller."

It was a part of his case to prove the allegation that he was driving a gentle horse; this made admissible evidence as to his conduct when placed in positions calculated to test his temper and training. Proof was offered as to two instances of this, one that he had been driven near to a moving locomotive and train of cars, and another that he had been driven near to a steam road-roller when in operation, and that he was not frightened by either. Inasmuch as it was conceded that this last was an object of terror to horses of ordinary gentleness, we think the testimony was relevant to the issue and properly received.

The plaintiff was also entitled to the privilege of showing any circumstance of time, place or position which rendered these tests most thorough; and if they were made at a point where the moving locomotive, by reason of its being over his head or beneath his feet, presented itself in a way especially

calculated to frighten the horse, this might be shown. Besides, this additional proof as to the place where the test was made was in the direction of fairness to the defendants in giving them an opportunity, if they could successfully use it, to diminish or destroy the value of the experiment. We do not see that the information thus given could put upon them any burden which they should not bear.

Again, it is said that the court erred in allowing this question to be put to a witness, viz: "How extensively was it known in the neighborhood that the horse had run away?" The plaintiff claimed that one item in the sum total of his damage was this, viz: that the value of his horse had been lessened in the estimation of all persons who had knowledge that he had been frightened and had run away, and that the diminution in value was in proportion to the number who knew the fact. This being so he might show how extensively people had such knowledge. The question called for knowledge only, and thus was unobjectionable; and as upon the defendants' brief the objection is made to the question itself, upon that it is not well taken.

The court returned the jury to a second consideration of the case, saying "that although it was the duty of each juror to decide the case upon his individual oath and conscience and not to be influenced by any other considerations than the law and the evidence, yet, as the trial had already occupied the court more than a week and had been a very expensive one, had already cost the State alone about $600 in the expenses of the court, to say nothing of the outlay of the parties, he felt it to be his duty, notwithstanding they had already deliberated so long, to request them to give a further consideration to the case." To the remark respecting the expense of the trial to the State, the defendants take exception; but, guarded as it is, we cannot in fairness presume that it misled any juror as to his duty. .

The motion in arrest is over-ruled, and a new trial is not advised.

In this opinion CARPENTER and FOSTER, Js., concurred. PARK, C. J., dissented as to the admissibility of the opinions

of the witnesses, but concurred in other respects. PHELPS, J., did not sit.