[ Filed May 18, 1889. ]

*TOWN OF PENDLETON, RESPONDENT, *v.* R. SAUNDERS ET AL., APPELLANT.

| 19 | 9 |
| f33 | 188 |
| 19 | 9 |
| f38 | 304 |

CONTRACT—CONSTRUCTION.—When the town of Pendleton contracted to pump water into a reservoir to the full capacity of its pumps whenever the first parties to the agreement desired to make a test of the reservoir not exceeding once each week for ninety days, such agreement did not impose the duty on said town of doing more than run its pumps to their full capacity during the time they were usually and reasonably run. It was not required to incur extraordinary or unusual expense for that purpose or to increase its force of engineers, if the one then employed was capable of running the pumps to their full capacity during the hours he was accustomed to run the same. If the supply of water failed for any cause without the city's fault, so that the reservoir could not be filled at the times required by S. and C., such failure did not put the city in default. If the cistern from which the supply of water was drawn was inadequate, or if, on account of the season, there was a scarcity of water, the city would not be responsible therefor.

RESERVOIR—TESTS OF.—The "tests" provided for in the agreement were designed for the equal benefit of both parties, and their purpose was to enable both parties to know by actual experiment when the reservoir was completed by being watertight.

CONTRACT—OBLIGATION.—So far as either party to the contracts mentioned in the pleadings has bound himself, he must substantially perform his agreement, and neither is bound beyond the terms of his agreement.

CONTRACT—SENSE IN WHICH WORDS ARE USED.—Language used in a contract must generally be held to be used in its ordinary and usual sense and signification, but when such rule would give the language no force or effect whatever, or would lead to an absurdity, the court may examine the context and view the whole subject matter in the light in which the parties evidently viewed it, and ascertain the meaning of the language they used by their situation, the subject matter of the contract, the context, and all the circumstances attending the execution of such contract.

EXPERT TESTIMONY—OPINION OF WITNESSES—WHEN COMPETENT.—Subdivision 9 of section 706, Hill's Code, makes the opinion of a witness competent evidence respecting the identity or handwriting of a person where he has knowledge of the person or handwriting; and also his opinion on a question of science, art, or trade, when he is skilled therein.

WITNESS—EXPERT.—An expert is one instructed by experience, and to become such requires a course of previous habit and practice or of study so as to be familiar with the subject.

APPEAL from the circuit court for Umatilla county.

*J. C. Leasure* and *J. J. Balleray*, for Appellants.

*L. B. Cox*, for Respondent.

STRAHAN, J., delivered the opinion of the court.

The object of this suit is to recover damages against the defendants for the alleged violation of the conditions of a certain bond executed by the defendants to the plaintiff. It appears from the complaint that on the eleventh

* Publication withheld pending petition for re-hearing.—[REPORTER.

day of November, 1886, the defendants, Saunders and
Church, contracted with the plaintiff to construct, build,
erect and put in for the plaintiff, in accordance with cer-
tain specifications, a system of water-works, including a
reservoir, which they agreed should be constructed and
built pursuant to the said specifications; and should have
when built, the capacity of holding 500,000 gallons of
water, and be water-tight; and for such system of water-
works, built according to such plan and specifications, the
plaintiff was to pay them $25,375 in bonds of the town of
Pendleton, which were to be received by the contractors
in payment at 6 per cent above par; that said Saunders
and Church entered upon the performance of said contract
and did build and put in a system of water-works for the
plaintiff pursuant to said agreement and substantially in
accordance with the specifications therefor in all respects
save and except that the said Saunders and Church failed
and neglected to dig, build and construct a reservoir for
water which should contain and hold 500,000 gallons, and
have the capacity for holding so much water, and be
water-tight; and did notify this plaintiff and claim that
they had completed said system of water-works, pursuant
to such contract, and did call upon the plaintiff for the
contract price of the same; that plaintiff examined said
system of water-works, and particularly their reservoir,
and finding the same not built according to said contract,
and particularly that the said reservoir was not built
pursuant to the specifications therefor, and not water-
tight, did refuse to accept said system of water-works and
to pay the balance of the contract price for the same, and
at said time plaintiff had paid Saunders and Church,
on said agreement, the sum of $22,200 in bonds of the
town of Pendleton, at the agreed price of 6 per cent above
par, and there still remained unpaid upon said contract
price the sum of $3,115, which plaintiff refused to pay
over to Saunders and Church, because of their default in
putting in said system of water-works according to con-
tract, and particularly because of their failure to construct

a reservoir pursuant to said contract, and make the same water-tight as required by the specifications; that Saunders and Church, for the purpose of inducing plaintiff to accept the system of water-works so constructed, and particularly to induce the plaintiff to pay them the balance of the contract price of said system of water-works, entered into a new contract with plaintiff, as follows:

"This agreement, made and entered into by and between C. P. Church and R. Saunders, as partners under the firm name of Saunders & Church, parties of the first part, and the committee on fire and water of the town of Pendleton, composed of W. F. Matlock, E. Reith and S. Rothchild, parties of the second part—witnesseth :

"That the parties of the first part, for and in consideration of the acceptance by the town of Pendleton of the water-works system, constructed for said town by the parties of the first part, in its present condition, and the payment by the town of Pendleton to the said first parties of the sum of the water bonds of the town of Pendleton, in the denominations of one thousand dollars each, and numbered 22, 23, 24, 25, 26, 27, 28, and 29, and of the sum of one hundred and ninety-two and forty-eight one-hundredths dollars, by warrant drawn on the town treasury, that being the balance of the price agreed upon by the first and second parties as due to said first parties from said second parties upon the full and complete completion of said water-works system, the parties of the first part agree to and with said second parties that within ninety days from the date of the signing of the contract the reservoir of the water-works system of the town of Pendleton shall contain at least 500,000 gallons of water, or as much as can be put in the reservoir by pumping, and that said reservoir, when containing 500,000 gallons of water or as near thereto as possible, shall not lose from evaporation and filtration more than one and one-half inches of water, vertical measure, during each twenty-four hours, and that if said reservoir, when containing said amount of water, at the expiration of said ninety days,

shall lose more than one and one-half inches of water by filtration and evaporation during each twenty-four hours, then that the said first parties shall, at their own cost and expense, within twenty days thereafter, make said reservoir water-tight by walling up the north, east and west walls of the same with hard-burned brick laid in cement mortar, and shall plaster the same with cement and black sharp sand, mixed in the customary proportions for cementing cisterns, on the inside of the walls of said reservoir to a depth of at least three-eighths of an inch.

"That the parties of the first part make, sign, execute and deliver to the town of Pendleton a good and sufficient bond in the penal sum of $4,000, with two or more sureties, to be approved by the common council, conditioned for the faithful performance of their part of the terms of this agreement.

"That the parties of the second part, for and in consideration of the covenants and agreements of the first parties herein mentioned and by them to be kept and performed, hereby agree to and with said parties, not as individuals, but for and on behalf of the town of Pendleton, to accept for said town, subject to the conditions and covenants mentioned in this agreement, the water-works system constructed for the town of Pendleton by the first parties in the condition the same is now in, and to pay and deliver upon the filing of this contract, duly signed and executed by the parties' thereto, accompanied with the bond of the first parties, heretofore mentioned, with the recorder of the town of Pendleton and the approval of the same by the common council, water bonds of the town of Pendleton, in denominations of one thousand dollars each, and num bered 22, 23, 24, 25, 26, 27, 28, and 29, also a warrant of said town, drawn on the town treasurer, for the sum of one hundred and ninety-two and forty-eight one-hundredths dollars.

"And it is further understood and agreed, by and between the parties to this agreement, that during the time mentioned in this agreement for the completion of

said reservoir, that the town of Pendleton will pump water into said reservoir to the full capacity of its pumps (except what water shall be needed for consumption in said town) whenever the first parties may desire to make a test of said reservoir, not exceeding once each week; and that the said first parties shall have the right during said time to bleed the reservoir as often as they may deem it necessary for the repairing of the same; and it is further understood and agreed by and between the parties to this agreement that W. F. Matlock, E. Reith, and S. Rothchild, parties of the second part, in the signing and execution of this agreement, assume no personal responsibility, and are not to be held in any way personally liable thereon, but that they sign and execute the same for and on behalf of the town of Pendleton.

"In witness whereof, the parties have hereunto set their hands and seals this twenty-first day of June, 1887.

"1.    SAUNDERS & CHURCH. [L. S.]
"4.    W. F. MATLOCK.        [L. S.]
"2.    E. REITH.              [L. S.]
"3.    S. ROTHCHILD.         [L. S.]

"In the presence of:

"JOHN J. BALLERAY.
"THOS. FITZGERALD.

"As to signatures 1, 2, and 3, 4."

That the foregoing agreement is the agreement or contract between Saunders and Church and the town of Pendleton mentioned in the bond hereinafter set forth; that on the seventeenth day of June, 1887, the defendants duly made and executed to the plaintiff their certain bond in the words and figures following, to wit:

"Know all men by these presents: That we, C. P. Church and R. Saunders, Zoeth Houser, Lee Moorhouse, C. B. Wade, and W. T. Chalk are held and firmly bound unto the town of Pendleton in the just and full sum of four thousand dollars (\$4,000), for the payment of which sum to the said town of Pendleton, we, and each of us, do by

these presents, bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents. Signed with our hands and sealed with our seals this seventeenth day of June, A.D. 1887.

"The condition of the above obligation is such that, whereas, the above bounden C. P. Church and R. Saunders are about to enter into a contract with the town of Pendleton, supplementary to the contracts now existing between said C. P. Church and R. Saunders, on one part, and the said town of Pendleton on the other, providing for the construction of the system of water-works in the said town, which contract bears date, or is to bear date, the twenty-first day of June, A.D. 1887, and which contract provides for the doing of certain work on the reservoir belonging to said water system, in case the same shall be necessary to make said reservoir water-tight; now, therefore, if said C. P. Church and R. Saunders shall strictly conform to and perform all their covenants contained in said contract, and abide by and perform all the cove nants and conditions therein contained on their part, then this obligation to be and become void, otherwise to be and remain in full force and virtue. Signed and sealed the day and year above written.

| | |
|---|---|
| "CHARLES P. CHURCH. | [L. S.] |
| "R. SAUNDERS. | [L. S.] |
| "ZO. HOUSER. | [L. S.] |
| "LEE MOORHOUSE. | [L. S.] |
| "C. B. WADE. | [L. S.] |
| "W. T. CHALK. | [L. S.] |

" Signed, sealed and delivered in presence of .

"JOHN J. BALLERAY.
"W. E. CREWS.
"G. W. PITTOCK.
"P. E. GEROULD."

That said bond was, on the twenty-third of June, 1887, approved by the common council of the town of Pendleton; that at said time there remained due the contractors from

the town of Pendleton, $3,115, and also $5,567.48 for extra
material and labor, and plaintiff thereupon paid the same,
as per said agreement herein set forth, and plaintiff has
performed all other conditions and promises by it on its
part to be performed, pursuant to the agreement set forth;
that defendants C. P. Church and R. Saunders have not
performed nor observed the conditions of the above-stated
agreement nor the promises on their part to be observed
and performed, but have made default therein; that said
reservoir has never had the capacity to contain 500,000
gallons of water without losing more than one and one-half
inches of water, vertical measure, by filtration and evap-
oration during each consecutive twenty-four hours nor less
than eleven inches, vertical measure, during such period;
that the defendants R. Saunders and C. P. Church were
duly notified and well knew the condition of said reservoir
and the fact that the same was not water-tight and would
not, at the expiration of the ninety days specified, contain
the said amount of water without losing more than one
and one-half inches of water, vertical measure, by filtra-
tion and evaporation during each consecutive twenty-four
hours nor less than twenty four inches; but have failed,
neglected and refused to make said reservoir water-tight,
and have failed, neglected and refused to wall up the
north, east and west walls of said reservoir, and to cement
the same or to do any act or thing to make said reservoir
water-tight, or to observe or perform the conditions of
said contract or bond, and still neglect and refuse so to do;
and by reason thereof, the conditions of said bond have
become broken, and the obligation has become absolute
and plaintiff is damaged in the sum of $2,270; that by rea-
son of the default of the said C. P. Church and R. Saunders
in constructing said reservoir and in making the same
water-tight, as provided in the written agreement of June
21, 1887, above set forth, plaintiff was compelled to run its
pumps constantly in order to keep a supply of water in
said reservoir and to furnish its cisterns with water, and
was compelled to employ for such purpose other and extra

labor, to wit, an additional engineer, for the period of one hundred and twelve days, and did actually pay as wages for the same the sum of $281, and plaintiff is specially damaged in said sum of $281; that by reason of the said default of the said C. P. Church and R. Saunders, and by reason of said reservoir failing to hold the water pumped into it, plaintiff was compelled to run its pumps and engine constantly in order to keep a supply of water in said reservoir and to furnish its customers with water, and was compelled to use and burn much larger quantities of wood, to wit, 112 cords, and that said wood was reasonably worth $4.49 per cord, and plaintiff was thereby specially damaged in the sum of $502.88; that by reason of the default of said Saunders and Church, the plaintiff was compelled to run its engine at a higher pressure than it would have run the same and drive its pumps at a greater rate of speed, and frequently it was compelled to shut the water off from the reservoir and to supply its customers with water directly from its pumps, and by reason thereof plaintiff's engine and pumps were much worn and damaged and plaintiff was thereby damaged in the further sum of $200. Said complaint was duly verified and filed.

To this complaint defendants filed a general demurrer, and the demurrer having been overruled, the defendants answered. By the answer defendants admit the contract made by Saunders and Church with plaintiffs, dated November 11, 1886, and that Saunders and Church proceeded under the same to construct a system of water-works for plaintiff, and gave notice to plaintiff that they had completed the same. They admit that at the time Saunders and Church gave notice to plaintiff of the completion of said water-works they had been paid the sum of $22,200, and there was still due on the said contract the sum of $3,115, and the further sum of $5,567.48 for extra work and for material. They admit that on the seventeenth day of June the defendants executed the bond set out in plaintiff's complaint, and that on the execution of said bond the plaintiff paid to Saunders and Church the

sums then due them.  The answer then denies specifically every other allegation of plaintiff's complaint, including the alleged inducement for signing the contract and bond sued on in this cause and set out in plaintiff's complaint.

Defendants alleged, in their answer, the following new matter :  That at the time said Saunders and Church gave such notice and made such demand (that is, gave notice that they had completed their contract and demanded the balance then due them), they had completed said system of water-works including said reservoir according to the said contract and said plans and specifications therefor ; that plaintiff being unprepared at the time of the completion of said work to make a test thereof, and being unwilling to accept the same without such test, and refusing to pay said Saunders and Church the balance of the contract price for said work, namely, the sum of $3,115, besides the sum of $5,567.48 due said Saunders and Church for extra work and materials, and said Saunders and Church being about to sue the plaintiff for said sums due them, the plaintiff and defendant, to avoid litigation, entered into the contract set up in plaintiff's complaint; that after the making of the contract mentioned in plaintiff's complaint, dated November 11, 1886, by and between Saunders and Church and the plaintiff herein, the said Saunders and Church did build and construct for plaintiff the said system of water-works in the town of Pendleton, including the reservoir belonging to said system, in strict accordance with the plans and specifications which formed a part of said contract, except where the same were changed by the direction and at the request of plaintiff, and did build and construct said reservoir so that the same had a capacity of and was capable of holding more than 500,000 gallons of water, and was when holding such quantity of water and at all times water-tight, and said Saunders and Church thereupon demanded of plaintiff the balance of the contract price of said system of water-works, which then amounted to $3,115, and the price of extra work done thereon and material furnished therefor, which amounted to the sum of $5,567.48; that

plaintiff, without any just cause or reason therefor, declined to pay said sums due said Saunders and Church and declined to test and receive said system of water-works till Saunders and Church would enter into and sign the contract of June 21, 1887, and furnish the bond, which is set out in plaintiff's complaint; that after the signing of said agreement and bond set out in plaintiff's complaint, the defendants Saunders and Church, during the time therein mentioned and provided for the completion of said reservoir, repeatedly requested plaintiff to pump water into said reservoir to the full capacity of its pumps (except what water was needed for consumption in said town), in order to make tests of said reservoir, but the plaintiff neglected and refused, at all times, to comply with said request; that within ninety days from the signing of said contract of June 21, 1887, the said reservoir was capable of containing and did contain 500,000 gallons of water, and did not lose from evaporation and filtration more than one and one-half inches of water, vertical measure, during each or any twenty-four hours, and was then and has been ever since water-tight; that said Saunders and Church have kept and performed on their part all the provisions and promises contained in said agreement of June 21, 1887, set out in plaintiff's complaint, which were to be kept and performed on their part, and that none of the conditions of said bond set up in the plaintiff's complaint and on which this action was brought have been broken.

The reply put in issue the new matter contained in the answer. A trial before a jury resulted in a verdict and judgment for the plaintiff in the sum of $2,250, from which judgment this appeal is taken. The notice of appeal contains twenty-six assignments of error, but those only which were specially insisted upon at the argument here will be noticed.

1. The liability of the defendants in this action must be measured by the contract which Saunders and Church made with the plaintiff dated June 21, 1887, and the bond made pursuant thereto, signed by all of the defendants,

dated June 17, 1887.   Though bearing different dates, these writings were delivered at the same time, took effect simultaneously, and must be construed together as a part of the same transaction.   By the first Saunders and Church covenanted with the plaintiff that upon the full and complete completion of said water-works system the parties of the first part agree to and with said second parties that within ninety days from the date of the signing of the contract the reservoir of the said water-works system of the town of Pendleton shall contain at least 500,000 gallons of water, or as much as can be put in the reservoir by pumping; and that said reservoir, when containing 500,000 gallons of water or as near thereto as possible, shall not lose from evaporation and filtration more than one and one-half inches of water, vertical measure, during each twenty-four hours; and that if said reservoir, when containing said amount of water, at the expiration of said period of ninety days, shall lose more than one and one-half inches of water by filtration and evaporation during each twenty-four hours, then, that the said parties shall at their own cost and expense within twenty days thereafter make said reservoir water-tight by walling up the north, east, and west walls of the same with hard-burned brick, laid in cement mortar, and shall plaster the same with cement and black,˗ sharp sand, mixed in the customary proportion for cementing cisterns, on the inside walls of said reservoir, to the depth of at least three-eighths of an inch. The bond signed by all the defendants recites the making of this contract, and then continues:   "And which contract provides for the doing of certain work on the reservoir belonging to said water system, in case the same shall be necessary to make said reservoir water-tight.   Now, therefore, if said C. P. Church and R. Saunders shall strictly conform to and perform all of their covenants contained in said contract, *and abide by and perform all the covenants and conditions therein contained on their part,* then this obligation to be and become void, otherwise to be and remain in full force and virtue."   The agreement made

between Saunders and Church with the town of Pendleton also contained the following provision:        *        *        *

"That during the time mentioned in this agreement *for the completion of said reservoir* the town of Pendleton will pump water into said reservoir to the full capacity of its pumps, except what water shall be needed for consumption in said town, whenever the first parties may desire to make a test of said reservoir, not exceeding once each week, and that said first parties shall have the right during said time to bleed the reservoir, etc." These provisions of the contracts between the parties necessarily assume that, although the possession of the system of water-works had passed from the contractors to the town of Pendleton, the reservoir was incomplete, and they provide for a time within which the contractors might complete it, that is, make it water-tight. A means of making certain tests is also provided, that is, the town of Pendleton will pump water into said reservoir to the full capacity of its pumps whenever the first parties may desire to make a test of said reservoir, not exceeding once in each week; but this provision did not impose the duty on the town of Pendleton of doing more than to run its pumps to their full capacity during the time they were usually and reasonably run. It was not required to go to extraordinary or unusual expense for that purpose, or to increase its force of engineers, if the one already employed was capable of running the pumps to their full capacity during the hours he was accustomed to run the same. If the city did all of this it performed the full measure of its duty in this particular and was not in default. If the supply of water failed for any cause without the city's fault, so that the reservoir could not be filled at the time required by Saunders and Church, such failure did not put the city in default. Its agreement was to run its pumps, and I have indicated the extent of its duty in that particular; but if the cistern from which the water was drawn was inadequate, or if, on account of the season, there was a scarcity of water, the city would not be responsible therefor. The

city had as much interest in these tests as had Saunders and Church. They were designed for the equal benefit of both parties. The undoubted object was to enable them to know by actual experiment when the reservoir was completed by being water-tight. But I do not think the terms of this contract bring the case within the principle laid down in the numerous cases cited by appellant's counsel on that subject. Those cases state elementary law, and their authority and binding force is fully recognized and admitted, but they are not applicable to the particular facts disclosed by this record. So far as either party to this record has bound himself to perform any act or thing, we hold he must substantially perform his agreement, and that neither is bound beyond the terms of his contract, and this is the substance of all the authorities cited on this subject by appellant's counsel. Without entering into a more particular specification, these general observations dispose of a number of the assignments of error by the appellants, adversely to them. A more particular specification would tend to too great prolixity, and I deem it unnecessary.

2. But there is one charge given by the court to which an exception was taken, which is not covered by what has been said; which charge is as follows : "If you find that the supply pipe of the reservoir did allow water to escape through its gates, and that such escape was due to the failure of the gates to shut by reason of gravel getting into the pipe, and if you further find that such gravel got into the pipe from the reservoir after the twenty-first day of June, 1887, and before the expiration of ninety days, by reason of its imperfect construction, and in its ordinary use, I instruct you that such loss was within the scope of the undertaking of the contractors, and they are to be held responsible therefor. I charge you that filtration, in the sense used in these instructions, means leakage from the reservoir from any cause owing to its defective construction, and its incapacity by reason thereof to hold water."

Further on in this charge the court remarked on the same subject: "The burden of proof is upon the plaintiff, the town of Pendleton, to show that at the expiration of the ninety days mentioned in the contract, the reservoir lost by evaporation and filtration, and from no other cause, one and one-half inches of water in twenty-four hours."

Appellants' counsel contend that the word *filtration* used in the contract is there used in its ordinary sense, and that these instructions are erroneous because they assume that it was used in a different sense. The ordinary rule undoubtedly is that language used in a contract is to be understood and held to be used in its ordinary and usual sense and signification; but within that rule this word would have no signification whatever. The meaning ascribed to it by lexicographers is "the act or process of filtering; the mechanical separation of a liquid from the undissolved particles floating in it"; and the process of filtering is defined "to purify or defecate, as liquor, by causing it to pass through a filter, or porous substance that retains feculent matter." In the sense in which the word is used in the contract it plainly imports a method of losing water from the reservoir. The words are: "Shall not lose from evaporation and *filtration* more than one and one-half inches," etc. To claim that the word in this connection can have or was designed to have its ordinary signfication, is an absurdity.

Looking at the subject matter of this contract, its object, the situation and surroundings of the parties, and particularly the connection in which the word occurs therein, we are not prepared to say the court misinterpreted it to the jury. The only question that does not seem clear to us is whether or not it is admissible in such case to employ interpretation at all; but looking at the whole subject matter in the light in which the parties evidently viewed it when they made the contract, we think that we may properly look for the meaning of the words they used in the context and in the surroundings and situation of the

parties and the subject matter itself. Thus viewing the matter, we are not satisfied that the court erred in its charge to the jury now under consideration. Section 700 of the Code aids this view of the matter. By that section it is provided: "When the terms of an agreement have been intended in a different sense by the different parties to it, that sense is to prevail against either party in which he supposed the other understood it; and when different constructions of a provision are otherwise equally proper, that is to be taken which is most favorable to the party in whose favor the provision was made."

3. The defendants took some exceptions to the introduction of evidence, which requires notice. R. A. Habersham, who has been a practical civil engineer for thirty years, was called by the plaintiff and testified without objection, in substance: "I was at the reservoir of the town of Pendleton yesterday. I have the elevation of the hill on which it is situated. I found the top of the reservoir wall about one hundred and forty feet above the pumping house. I took it with a barometer. That is a recognized mode of taking elevations. I have had experience in blasting and digging out excavations in the ground and in soil of the same character as that out of which the reservoir was digged. The effect of blasting is to shake up and loosen such ground, and might have a tendency to give rise to fissures and appertures in the surrounding earth. I have made a test to determine as to whether rock of the character as that out of which the reservoir was digged would resist leakage of water. I tested some of the same rock by putting it in water for twenty-four hours. When I took it out some of the pebbles still stuck together, but generally it had fallen apart and showed no evidence of having anything in the nature of cement in it. The *matrix* in which the pebbles were enveloped is mostly volcanic ash, with very little cohesiveness about it. I have had experience in building walls to resist water. If the material into which the reservoir is excavated is solid, whether it be earth or hard pan, it would not require any

brick or stone lining at all. It would be sufficient to plaster it with cement to prevent absorption. If it is necessary to make a wall on account of one weak spot in the excavation, then a wall (provided the backing is put in well and made solid before any masonry is begun), four inches of brick, laid in good cement, and laid as you describe, would be sufficient; but this estimate makes no allowance for any unfaithful or bad work. It must be absolutely sound. For a proper backing I should want a stone backing, or else clay rammed in hard. Irregularities in the side I should have filled in with either concrete or good hard clay, well tamped in." After further describing the backing necessary to make the wall safe, etc., the plaintiff's counsel asked the witness the following question: "I would ask you to state what effect freezing would have on the wall you speak of?" This was objected to and the objection overruled and an exception taken, and the witness then answered: "It would be liable to crack the wall."

The witness further testified under exception: "The hole in which the reservoir is built, not being water-tight, the reservoir would leak down to the bottom of this crack, and if the clay support were to continue alternately freezing and thawing, it would break off in the neighborhood of that soft place. The tendency would be to yield at all parts of the wall within the reach of this breaking up." This witness also, under exception, gave his opinion to the jury on several similar points in the controversy.

Frank Duprat, Felix Roumagoux, and R. Paschal, who were stone-masons, and who constructed the walls in the reservoir for the city, to make the same water-tight, were each asked various questions tending to elicit their opinions as to the kind of walls necessary to be reasonably safe and durable, what would be the effect upon the wall of water running behind it and freezing, etc.; and to each and all of these questions the defendants' counsel objected, for the reason that the same was irrelevant and immaterial, which objections being severally overruled, exceptions

were duly taken. A. J. Ford, who was a brick-mason and had had experience in building cisterns and walls, also gave his opinion as to the kind of a wall that would be water-tight and reasonably durable.

If these were not proper subjects for expert evidence, or if the several witnesses offered did not possess the requisite knowledge to enable them to give an opinion, the evidence offered should have been excluded on the ground of its incompetency; but counsel did not make that objection. They relied upon its immateriality and irrelevancy, and insisted on no other objections.

Under the plaintiff's view of this case, this evidence was both relevant and material. It tended to show the nature and character of the wall the plaintiff was required to construct in order to make the reservoir reasonably durable and water-tight. It was material and relevant as tending to show the extent of the labor and material which were necessary to construct such wall, and which would, to some extent, aid the jury in determining the amount the plaintiff was required to expend in its construction. But allowing the defendants the benefit of the other objection,—that such evidence was incompetent,—still the exceptions could not be sustained.

Section 706 of Hill's Code provides: "In conformity with the preceding provisions, evidence may be given on the trial of the following facts:

\* \* \* \* \* \* \* \* \* \*

"9. The opinion of a witness respecting the identity or handwriting of a person when he has knowledge of the person or handwriting; his opinion on a question of science, art, or trade, when he is skilled therein." \* \*

This statute merely indicates the general rule admitting expert testimony, and I think all the testimony to which exceptions were taken, on the subject indicated, were of that nature. Each of the witnesses appeared to be skilled in the particular science, art, or trade, to which the questions related. "An expert is one instructed by experience, and to become one requires a course of previous habit and

practice, or of study, so as to be familiar with the subject."
*Nelson* v. *Sun Mutual Insurance Company*, 71 N. Y. 453.
'An expert must have made the subject upon which he
gives his opinion a matter of particular study, practice or
observation; and he must have particular, special knowl-
edge on the subject." *Jones* v. *Tucker*, 41 N. H. 546.
"Knowledge of any kind, gained for and in the course of
one's business as pertaining thereto, is precisely that
which entitles one to be considered an expert, so as to
render his opinion, founded on such knowledge, admissible
in evidence." *Buffum* v. *Harris*, 5 R. I. 250. And 1 Green-
leaf's Ev., section 440, is an authority to the same point.
All of the evidence offered on the subjects indicated above
was clearly admissible, and a more particular discussion of
the subject would be unprofitable and is unnecessary.

4. A point was made during the argument here, that
the writings sued on were without consideration, and the
same question was made prominent during the trial in the
court below; but I am unable to discover any force in
the appellant's contention on this point. The writings
declared on are under seal, and seal always imports a con-
sideration; but that is not all. The mutual covenants and
agreements of the parties are a sufficient consideration to
support such mutual promises.

The judgment of the lower court is affirmed.

[UPON RE-HEARING.—Filed June 10, 1890.]

THAYER, C. J., delivered the opinion of the court.

This case was argued, submitted and decided at the last
term of this court sitting at the town of Pendleton. Some
doubt prevailed, however, in the minds of some of the
members of the court as to the correctness of the con-
clusions arrived at, consequently it was concluded to grant
a re-hearing. The facts of the case are pretty fully set
out in the opinion rendered at the former hearing; but as
it will enable me more clearly to express my views in
regard to it, I shall briefly advert to them.

The appellants, with certain other persons as their sureties, on the seventeenth day of June, 1887, executed to the respondent a bond or obligation for the payment to the respondent of the sum of $4,000. Said bond contained the following condition and recital:

"The condition of the above obligation is such, that, whereas, the above bounden C. P. Church and R. Saunders are about to enter into a contract with the town of Pendleton, supplementary to the contract now existing between said C. P. Church and R. Saunders, on one part, and the said town of Pendleton on the other, providing for the construction of the system of water-works in said town, which contract bears, or is to bear, date the twenty-first day of June, A.D. 1887, and which contract provides for the doing of certain work on the reservoir belonging to said water system, in case the same shall be necessary to make said reservoir water-tight. Now, therefore, if said C. P. Church and R. Saunders shall strictly conform to and perform all their covenants contained in said contract, etc., then this obligation to be and become void," etc.

The agreement referred to in the bond contained the following stipulations:

"That the parties of the first part, for and in consideration of the acceptance by the town of Pendleton of the water-works system constructed for said town, by the parties of the first part, in its present condition, and the payment by the town of Pendleton to said parties of the sum of water bonds by the town of Pendleton, in the denomination of one thousand dollars each, and numbered 22, 23, 24, 25, 26, 27, 28, and 29, and of the sum of one hundred and ninety-two and 48-100 dollars, by warrant drawn on the town treasurer, that being the balance of price agreed upon by the first and second parties as due to said first parties from said second parties upon the full and complete completion of said water-works system, the parties of the first part agree to and with said second parties that within ninety days from the date of the signing of this contract the reservoir of the water-works system of

the town of Pendleton shall contain at least five hundred thousand gallons of water, or so much as can be put into the reservoir by pumping; and that said reservoir, when containing said 500,000 gallons of water or as near thereto as possible, shall not lose from evaporation and filtration more than one and one-half inches of water, vertical measure, during each twenty-four hours, and that if said reservoir, when containing said amount of water, at the expiration of said period of ninety days shall lose more than one and one-half inches of water, by filtration and evaporation, during each twenty-four hours, then that the said first parties shall, at their own cost and expense, within twenty days thereafter, make said reservoir water-tight by walling up the north, east and west walls of the same with hard-burned brick, laid in cement mortar, and shall plaster the same with cement and black, sharp sand mixed in the customary proportions for cementing cisterns on the inside of the walls of said reservoir to a depth of at least ⅜ of an inch.

"And it is further understood and agreed by and between the parties to this agreement that during the time mentioned in this agreement for the completion of said reservoir, that the town of Pendleton will pump water into said reservoir to the full capacity of its pumps (except what water shall be needed for consumption in said town) whenever the first parties may desire to make a test of said reservoir, not exceeding once each week, and that the said first parties shall have the right during said time to bleed the reservoir as often as they may deem it necessary for the repairing of the same."

These provisions of the said bond and contract indicate very clearly the status of the affair between the parties at the time of their execution.

The appellants had contracted with the respondent to construct and put in for the latter a system of water-works, including a reservoir, which reservoir was to be built according to certain specifications, was to have the capacity of holding 500,000 gallons of water and be water-

tight.   They had ostensibly, I suppose, completed the works and were claiming that they were entitled to their pay.   The officers of the city having the charge of the business were probably suspicious that the reservoir might not be water-tight, hence they withheld payment until the bond and supplemental agreement were executed. They thereby evidently sought to secure to the city a full compliance upon the part of the appellants with the terms of the original contract in the respect mentioned; and the rights of the parties in the premises depend upon the construction of the supplemental contract, which must be construed in view of the surrounding facts and circumstances.

The parties understood, no doubt, that it might be necessary to wall up the said three sides of the reservoir and plaster the walls, as provided in the supplemental contract, in order to render it water-tight, and the time and opportunities agreed to be given to the appellants to test and examine it were for the purpose of enabling them to ascertain with certainty whether or not it was necessary to do that.   The important consideration in the matter was to secure a water-tight reservoir; the appellants had agreed in the original contract to construct such an one, and they were not relieved from the obligation by the supplemental contract.   The object and purpose of walling up the sides and doing the plastering as therein provided were to secure that result, which the parties evidently supposed would accomplish it beyond a peradventure.   The language of the instrument is that the said appellants shall "make said reservoir water-tight by walling up," etc.   The respondent agreed, it is true, that it would pump water into the reservoir to the full capacity of its pumps ("except what water shall be needed for consumption in said town") whenever the first parties may desire to make a test of said reservoir, not exceeding once each week, and that said first parties should have the right during said time "to bleed the reservoir" as often as they might deem it necessary.   This imposed an obligation upon the

respondent, but I doubt very much whether it was such an one that neglect upon the part of the respondent to observe it would constitute a defense in favor of the appellants in an action against them for a breach of the original contract to construct a water-tight reservoir. It certainly would not unless such neglect could be construed into a positive acceptance by the respondent of the reservoir in the condition it was in at the time of the execution of the supplemental contract, although it would have been a good answer to a charge by the respondent of a failure on the part of the appellants to build the wall and do the plastering in the absence of clear proof that the reservoir could in no other manner be made water-tight. Under either of these contracts the appellants were obligated to construct a reservoir which would hold water. The second contract differs from the first one only in its prescribing the mode in which the reservoir was to be made water-tight. The importance of its being so made is obvious. A leaky reservoir constructed for the purpose of supplying a town with water would be worthless and render the water system, which it was intended to maintain, a total failure. The parties to the said contracts understood this perfectly, and had the fact in view at the time of their execution.

The appellants' counsel insist that if a contract is not ambiguous or uncertain it is the duty of the court to take the contract as it finds it, and enforce the stipulations which the parties themselves have made, as they are only bound to the extent of those stipulations. If the counsel mean by this that the courts in their construction of contracts are bound by the literal words contained therein, taken according to their strict signification, they are very wide of the mark. If the intention of the parties to the contract is manifest, of course "the court should enforce the stipulation which they themselves have made." A knowledge of such intention cannot always, however, be gained from the abstract meaning of the language which the parties employ in their contracts, but must be ascer-

tained many times from the idea which was sought to be conveyed by the use of it.   Nor should the interpretation of the language be confined to its specific meaning, as general words, in a contract or other instrument, often imply important obligations that are binding upon the parties.

The case in hand furnishes a good illustration of the principle suggested.   The appellants in the original contract with the respondent undertook to build and construct a reservoir which should be water-tight.   The terms of the undertaking were general, yet an implied obligation was thereby created to the effect that the appellants would do whatever might be necessary to make such water-tight reservoir.   If, therefore, it were necessary, in order to prevent the reservoir from leaking, to wall up the four sides thereof, and plaster the entire inside "with cement and black sharp sand," they were just as much obligated to do it under the general terms of the contract as they would have been had it been definitely specified therein. And I think the language of the second contract, read by the light of surrounding circumstances, was sufficiently broad to require the appellants, in case it were necessary to render the reservoir water-tight, to construct permanent and durable walls on the said three sides of the reservoir in such a manner as to resist the force of the elements common to the locality and climate where they are situated, and to which they are liable to be subjected.   I do not agree with the view maintained by the learned counsel for appellants, that the construction of the walls without regard to their permanency or durability, although it might answer the letter of the contract, would be sufficient to absolve the appellants from their obligations in the premises.   The performance of the work specified in the contract was to effectuate an object.   It was intended to secure to the town of Pendleton a system of waterworks that would endure as long as improvements of that character usually continue.   It was intended to have stability, and its establishment was contracted for

with a view to that result.   No performance of the work, therefore, not done in accordance with the spirit of the contract should be regarded as a compliance with its terms. Hence, the said walls, if built at all, were required to be constructed so as to be protected from frosts, as far as skill would enable it to be done, and have such a "backing" as would support them and prevent water during rainy seasons from getting behind them.   And the obligation of the appellants to construct walls of that character and solidity is fairly inferable from the terms and conditions of the said contract.

The testimony, therefore, offered by the respondent, to show "what would have been a proper wall to have used in the reservoir to have held water, to stand a reasonable length of time, taking into consideration the weather and the frosts which were liable to occur ; the wall to be constructed of the material and in the manner provided in the supplemental contract," and as to what effect frost would have upon the walls, was competent.

Nor do I agree with the view indicated by said counsel, that the respondent was required to comply strictly with its agreement to pump water into the reservoir as provided in said contract, in order to entitle it to recover in the action.   I think that a substantial compliance by the respondent with the agreement was sufficient, if the appellants wholly failed to perform the contract on their part. The agreement was made to enable the appellants to test the reservoir in order to ascertain if it were "water-tight," and to give them an opportunity to repair any leakages which might be found in it.   If, therefore, the respondent so far complied with its said agreement as to allow the appellants to accomplish that purpose, they could have no just grounds for complaint.   It was immaterial whether the reservoir was filled with water one time or a dozen times in order to discover if it leaked or not.   Whenever the water was pumped into it such fact could be readily ascertained.   The appellants had the right under the second contract to draw the water off,—"to bleed the reservoir as

often as they may deem it necessary for the repairing of the same,"—and any wilful neglect on the part of the respondent to fill it so that tests could be made for the purpose of ascertaining whether or not it needed repairing would have been a good defense to a recovery upon said contract. The appellants had the right to ascertain by a practical test, if they were ignorant of the fact, whether or not it was necessary to repair the reservoir in order to make it water-tight; but if, as the court charged the jury, they were afforded reasonable opportunities for ascertaining the fact, or if they had knowledge without making such test, that it would not hold water, they should not then be absolved from their undertaking.

The issues in this case were mainly issues of fact. The appellants maintained that it did not require the three walls of the reservoir to be walled up and plastered as specified in the supplemental contract in order to render it water-tight; they claim that they established that fact by the tests made, and also claim that the respondent had failed to give them the opportunity to make the tests and do the repairing of the reservoir, as it agreed to do in and by said contract. These were the questions to be determined in the case, and they were very proper ones to be submitted to a jury. The bill of exceptions shows that cogent proof was introduced on the part of the respondent tending to show that the reservoir was not water-tight and could not be made so without bestowing thereon the additional work, labor and expense referred to, also that the appellants had been given, in accordance with said contract, reasonable opportunity to make the test and do the necessary repairing, and that they had neglected to avail themselves of it. The jury found a verdict for the respondent, and unless they were misled by the rulings of the court to the prejudice of the appellants, the judgment appealed from should not be disturbed.

The appellants' counsel complain of many of the rulings of the court at the trial; of certain of the instructions given to the jury and of the refusal of the court to give

XIX. OR.—3.

those which they requested. I have examined these various rulings and conclude that there was no error committed in making them which would authorize a reversal of the judgment.

I entertain some doubt in regard to the correctness of the following instruction given by the court to the jury: "If you find that the supply-pipe of the reservoir did allow water to escape through its gates, and that such escape was due to the failure of the gates to shut by reason of gravel getting into the pipe, and if you further find that such gravel got into the pipe from the reservoir after the twenty-first day of June, 1887, and before the expiration of the ninety days, by reason of its imperfect construction and in its ordinary use, I instruct that such loss was within the scope of the undertaking of the contractors and they are to be held responsible therefor." "That filtration in the sense used in the instructions meant leakage from the reservoir from any cause owing to its defective construction and its incapacity by reason thereof to hold water." The escape of water through the supply-pipe of the reservoir, whatever may have been the cause, could not mean "filtration" as defined by the dictionary.

But the parties to the said contract certainly did not intend to use the word in the sense in which it is defined; they could not have meant by it the act or process of filtering. They undoubtedly intended it in the broadest sense which could be implied therefrom, viz., "passing through." They must have meant the escape of the water contrary to the design of the system, which could be obviated by the "walling up of the walls of the reservoir" and doing the plastering as specified, as no other view would be consistent with the obvious intention of the parties. The system of water-works put in by the contractors under the original contract with the city could only be operated by pumping water from a well near the river and forcing it through a receiving pipe, where it was held by means of gates in the pipe in order that it might be drawn off through the mains which supplied the town. The con-

tract provided that the reservoir should be water-tight, hence the parties certainly intended that it should be constructed so as to enable the gates to be closed, otherwise it could not hold water. The supplemental contract was entered into merely for the purpose of carrying out the terms of the original one, consequently it was the duty of the appellants, if the reservoir had been so constructed as to prevent the gates from being used for the purpose for which they were designed, to repair it in that particular. They stipulated in effect that at the end of ninety days the reservoir should be virtually water-tight, if not they would make it so by the mode agreed upon.

The theory of the respondent's counsel at the trial of the case in the circuit court was that the action of the water upon the walls of the reservoir, owing to its imperfect construction, loosened and set in motion particles of gravel which found their way into the supply-pipe and prevented its gates from closing, thereby causing a waste of water through the same. In view of the testimony on the part of the respondent in support of this theory the said instruction was based, and I am of the opinion, after a due consideration of the two contracts, the nature of the subject matter thereof and circumstances connected therewith, that it was properly given.

The judgment appealed from will therefore be affirmed.