<div align="center">Decided 30 April, 1898.</div>

## FIRST NAT. BANK *v.* FIRE ASSOCIATION.

### FIRST NAT. BANK *v.* AACHEN INS. CO.

<div align="center">[ 53 Pac. 8; 50 Pac. 568 ]</div>

1. EXPERT AND OPINION EVIDENCE DISCUSSED.— The character and variety of expert evidence is here discussed, and the exceptions to the general rule fully explained. *Fisher* v. *Or. Short Line Ry. Co.*, 22 Or. 533, and *Nutt* v. *Southern Pac. Co.*, 25 Or. 291, cited.

2. EXCEPTION TO RULE ON OPINION EVIDENCE.— A skilled witness may be allowed to add his opinion as to the conclusion to be drawn from certain facts and circumstances which have come under his personal observation, where they are otherwise incapable of being detailed and described so as to enable anyone but the observer himself to form an intelligent conclusion from them, although the matter referred to is not of itself a proper subject of expert testimony.

3. IDEM.— Under this exception it is competent for skilled firemen, in connection with their descriptions of a fire, to state whether or not in their opinion it was burning naturally or whether some inflammable substance had been distributed about the premises.

4. SUBJECT OF EXPERT TESTIMONY.— Whether or not a fire in a certain store stocked with certain goods could have spread to the upper floor of the building within a given time, and whether under the given circumstances and within a certain time it would have generated sufficient explosive power to blow open doors, etc., is a proper subject of expert testimony.

5. EVIDENCE OF MOTIVE FOR INCENDIARISM.— Though the pleadings admit that the insured sustained a loss exceeding the amount of insurance, yet it is com-

petent to show that the stock was old and undesirable as a motive for burning it.

6. SETTING ASIDE VERDICT — INSUFFICIENCY OF EVIDENCE.— A verdict will not be disturbed on appeal if there was any evidence to support it: *Wallace* v. *Suburban Ry. Co.*, 26 Or. 174; *Van Bibber* v. *Plunkett*, 26 Or. 562, and *State* v. *Pomeroy*, 30 Or. 797, applied.

7. TRIAL — FAIRNESS OF INSTRUCTIONS.— A statement by the judge, preliminary to his instructions, that the parties had agreed on the law of the case, and that he would give certain instructions presented by defendant, does not give undue prominence to defendant's case.

8. DIFFERENT DEGREES OF PROOF — CIVIL AND CRIMINAL CASES.— In an action on a policy of insurance where the defense is arson by the insured it is not improper for the court to point out to the jury the difference between the degrees of proof required in civil and criminal cases, and state that in a civil case there is no question whether a crime has been committed, and that a verdict for either party could not be used against the other in any criminal prosecution — such statements are intended merely to caution the jury against allowing the criminal phase of the case to influence their verdict.

9. MISLEADING INSTRUCTION.— An instruction is not erroneous because it uses unusual or peculiar references for illustration if it is not calculated to mislead an intelligent jury.

10. MOTION FOR VERDICT IS A DEMURRER TO THE EVIDENCE.— A request to direct a verdict is equivalent to a demurrer to the evidence, and a review thereof is governed by the rules applicable to a motion for nonsuit.

11. SUFFICIENCY OF BILL OF EXCEPTIONS — NONSUIT.— The supreme court will not review a refusal to direct a verdict or a nonsuit unless the bill of exceptions affirmatively shows that it contains all the evidence given at the trial by the party carrying the burden of proof. A bill of exceptions properly framed to present the exceptions reserved during the trial would still not be sufficient to present the ruling on motion for verdict or nonsuit unless it contained all the testimony: *Coffin* v. *Hutchinson*, 22 Or. 554; *Johnston* v. *Or. Short Line Ry. Co.*, 23 Or. 94, and *Schaefer* v. *Stein*, 29 Or. 147, followed.

From Multnomah : E. D. SHATTUCK, Judge.

Consolidated actions by the First Nat. Bank of Portland against the Fire Association of Philadelphia and the Aachen and Munich Fire Insurance Company, on certain assigned policies of fire insurance issued to H. Wolf and Bro.   Judgments for defendants from which plaintiff appeals.

AFFIRMED.

Before the hearing of the case respondents filed a motion to strike from the files a transcript of the entire testimony that was attached to the bill of exceptions.

MOTION OVERRULED.

For appellant there was a brief over the names of *Henry E. McGinn* and *Dolph, Mallory & Simon*, with an oral argument by *Mr. McGinn*.

For respondents there was a brief over the name of *Cox, Cotton, Teal & Minor*, with an oral argument by *Mr. William W. Cotton*.

MR. JUSTICE WOLVERTON delivered the opinion.

These actions are based upon certain policies of insurance against loss and damage by fire, and were tried together. The defense is single, and is, in effect, that the policy holders set or caused fire to be set to the property covered by the policies. The verdict and judgment were for the defendants, and plaintiff appeals.

The questions most difficult of solution arose from the examination of the witnesses David Campbell, M. Laudenklos, A. E. Austin and George H. Wemple. Campbell testified, among other things, as follows : "I was in front of the building. Should judge the flames coming out of each of the two stories were five or six feet, covering the whole space, upstairs and downstairs. I could not say whether the glass from the windows and doors upstairs and downstairs was all gone out or not. I would judge it was, because of the character of the smoke and flames across the street. * * * The fire seemed to be burning very rapidly. I should judge that it originated in the southeast corner of the store. The flames were sweeping the whole length of the store, and escaping from the front. From the time I heard the alarm until I got there was between three and four minutes. * * * I went through the door behind the stream of water. * * * When I first got in there was a great deal of

fire burning.  It was burning very fiercely.  All the
goods seemed to be on fire.  There wasn't much wood-
work burning, except the roof."   Laudenklos :  "The
only thing I could see was a mass of flames.  It was
escaping from the store from the first story and the sec-
ond story,— from both stories; the whole of the frontage.
It was a pretty strong flame.  There was a great deal of
smoke, and a great deal of fire.  The smoke was dark.
It was not more than usually dark.   *   *   *   I entered
the building from the front.   *   *   *   Went in behind
the water.  There was a volume of flames in there.  The
whole of it seemed to be in flames.  The fire was intense.
It had covered the whole lower floor,   *   *   *   burning
about the same all over.   *   *   *   I took notice of how
the clothing was burning   *   *   *   when I got upstairs.
It was all piled up on the counters or tables, as you call
them,— piled  in  rows,— and  the  outside  edges  were
burned off, and   *   *   *   a little on top.  Did not pay
much attention to whether that was uniform all over the
building.   *   *   *   It was all about burned alike, that
I seen of it.   *   *   *   We   *   *   *   were not longer
than five minutes in getting to the fire after the alarm."
Austin :  " We got to the fire about two minutes after we
got this alarm.   *   *   *   The flames on the lower floor
poured out across the street.   *   *   *   Just before we
got to Ash street, on Front, the windows blew out, and
the smoke and flames came out of the upper windows al-
most as far out as the ones on the lower floor.  They
reached almost half way across the street,— fifteen or
twenty feet from the building.  Before we got in the
building the lower windows were broken.   *   *   *   They
broke just after we turned on Front street.  The smoke
and flames were pouring out when we turned into Front
street.  We saw the windows come out upstairs.  We
could hear the windows break as they came out.  Well,

the windows went out about as you would confine gas or any hot thing to break a window. They go off with a kind of dull report. * * * The fire was burning all over the entire lower floor, so far as I could see, and the upper floor I should judge to be in the same condition. The flames were coming out in as great volume upstairs as below ; all over the store generally about the same ; pouring out of all the openings upstairs and down." And Wemple, among other things, as follows : " I traveled as fast as the horse could go, and from the time I heard the first stroke of the bell until I got to the fire, I should say, two or three minutes. When I arrived there, the smoke and the blaze was coming out of the upper windows, and down below. * * * The fire was burning all over. There seemed to be fire all over everywhere. I could not say whether the fire was burning uniformly or not. It was burning everywhere."

The assignments of error, covering the matters objected to, as they concern these witnesses, are numbered from 2 to 13, inclusive ; and we will recite such of the interrogatories in their order, together with the answers thereto, as may be deemed pertinent to a clear understanding of the questions involved, and the opinion of the court touching them : (2) Question. (To Campbell.) " I will ask you to state, from your experience as a fireman, and from what you observed in regard to this fire, whether or not, in your opinion, this fire was burning naturally on material that it had to feed upon, or whether, in your opinion, something of an inflammable character had been distributed, to accelerate the fire, and give it some better food than the merchandise naturally would that was burning?" Answer. " It was my opinion that the fire was an incendiary fire." (3) Q. " I will ask you if you have ever known of any other fire, that you have had experience with, in cotton or woolen

goods, of the combined texture of cotton and wool, to burn naturally as this fire burned." A. "No ; I do not know as I have." (4) Q. (To Laudenklos.) In effect, the same as 3. (5) Q. " Supposing the hatch over the elevator had been closed, do you think the fire could have started below, and have gotten up and spread up the upper floor as rapidly as it did, having only the stairway as a means of getting in the upper story, if it had been a fire burning from natural causes?" (6) Q. (To Austin.) " I will ask you to state, from your experience as a fireman, whether or not a fire burning naturally, without any substance which would have a tendency to create gas, would gather sufficient force within a building to blow the windows out." A. " Well, I think, in time, it would. The hot air and the gasses from any burning substance at all will eventually accumulate enough gas to blow out an ordinary window, in time, with extreme heat." (7) Q. " What do you say in regard to the capability of a fire burning on the lower floor of this store, in which was contained clothing, consisting of wool and cotton, and a mixture of both wool and cotton, samples, suspenders, and collars, being able to generate sufficient power to open the iron doors and windows, which were situated on the rear end of that building, without the presence of some material which would have a tendency to generate more gas or explosive force than this property naturally would in burning?" (8) Q. " If those doors and windows had blown out, say, within three minutes after the fire started, what would you say?" (9) Q. (To Wemple.) The same in purport as No. 2. (10) Q. The same in purport as Nos. 7 and 8. (11) Q. " I will ask you to state, from your experience as a fireman, answering now from your own knowledge and observation, whether or not it is your opinion that this

fire originated and burned from natural causes, or was an incendiary fire,— burning upon some inflammable material which had been distributed in the store for the purpose of accelerating and aiding the fire?'' A. '' I could not say. I did not investigate it. The fire was out of my district. I had no chance to investigate it.'' (12) Q. '' I speak now from your own observation of the conditions there. Do you say, from your observation of the conditions there, and from your knowledge and experience as a fireman, that it was burning naturally, as an accidental fire may have started, or was it burning on material contained in the store, without any aid from more inflammable material spread over the store?'' A. '' No ; it could not.'' (13) Q. '' Or do you say that it was an incendiary fire ; that is to say, preparation had been made for it,— material had been laid to help the fire along?'' A. '' I could not say as to that. Of course, as I said before, it would have had to have had some assistance, in some way, to burn as it did. It might have been gasses of some kind.''

From the nature of the questions put to these witnesses, they may be classified as : (1) Those touching the character of the conflagration,— whether it was such as would naturally result from the burning of the stock of goods known to have been contained in the store, without the aid of more inflammable matter, or whether some substance of a more inflammable nature had been added, which accelerated its action. Nos. 2, 9, 11, 12 and 13 are of this class. (2) Those calling for an opinion of the witnesses as to whether the fire would have spread to the upper floor as rapidly as it did, or have forced open the iron doors and shutters in the rear of the building, if it had been burning from natural causes. Of this class are Nos. 5, 6, 7, 8 and 10. And (3) those which simply called for the experience of the witnesses as to the

appearance of such phenomena at other fires within their knowledge.   Of this class are Nos. 3 and 4.   It may be premised, in this connection, that the answer to question 2 was not responsive ; that questions 3 and 4 elicited nothing of value to either party, and nothing to their prejudice, so they may be dropped from further consideration ; and that the answers to question 6 and 11 were unquestionably harmless, assuming that the questions themselves were incompetent.   The question for the jury to determine was whether the assignors of plaintiff set or caused fire to be set to the stock of goods, for the injury or destruction of which damages are claimed.   The evidence submitted for their consideration was in its nature circumstantial, and the ultimate conclusion was a result to be drawn from inference, and not from matters which within themselves furnished absolute demonstration of the problem.   The evidence coming under the first classification is sought to be sustained upon the ground that the phenomenon produced by the burning of the stock of goods was not capable of exact description, so as to produce the same effect upon the minds of the jurors as was produced upon the senses of the observer, and that it was necessary for the observer to supplement his description with an opinion as to how it impressed him, in order to make it intelligibly full and cognizable to the jury ; and it is insisted that such an opinion is but an integral part of the observer's narrative of what he witnessed.   That falling under the second head, it is urged, was properly admitted as expert testimony.

1. Now as to proposition one.   The general rule is that the opinions of witnesses are not evidence, but to this there are two notable and well-established exceptions, both of which are said to rest upon a clear necessity :   that is to say, it is only allowable when from the nature of the

case the facts cannot be stated or described in such a manner as to enable those whose duty it is to draw inferences and conclusions therefrom to form an accurate judgment respecting them ; and when no better evidence than such opinions is obtainable. In *Nutt* v. *Southern Pac. Co.*, 25 Or. 291 (35 Pac. 653, 655), Mr. Chief Justice LORD says : ''The necessity for opinion evidence only exists where the facts in controversy are incapable of being detailed and described so as to give the jury an intelligible understanding concerning them ; but when the facts are such as can be detailed or described, and the jury are able to understand them and draw a conclusion from them without such opinion evidence, the necessity for it does not exist.''    Expert testimony, technically so-called, is employed where a question of science, art, or trade is involved, and the person asseverating is specially skilled therein ; and it is not sufficient to warrant its introduction that the witness may know more of the subject of inquiry, and may better comprehend and understand it, than the jury, but the inquiry must relate to some one of the subjects wherein skill imparts a superior knowledge, which persons of average intelligence may not be presumed to possess.    Chief Justice SHAW states the proposition clearly.    He says : '' It is not because a man has a reputation of superior sagacity and judgment and power of reasoning that his testimony is admissible.    If so, such men might be called in all cases, and advise the jury, and it would change the mode of trial.    But it is because a man's professional pursuits require peculiar skill and knowledge in some department of science not common to men in general, which enables them to draw an inference when men of common experience, after all the facts proved, would be left in the dark.''    *New England Glass Co.* v. *Lovell*, 7 Cush. 319. The question is quite fully discussed by Mr. Chief Jus-

tice LORD in *Fisher* v. *Or. Short Line Railway Co.*, 22 Or. 533 (30 Pac. 425), and many authorities are there cited in support of the view here adopted, so that it is unnecessary for us to pursue the matter further. For additional authorities in its support, see *Ferguson* v. *Hubbell*, 97 N. Y. 507 (49 Am. Rep. 544) ; *Clifford* v. *Richardson*, 18 Vt. 620 ; Bradner, Ev. 358, 359, 368.

2. The other exception relates to the opinion evidence of nonexperts, or witnesses testifying respecting facts which men in general are as well equipped, qualified, and capable of comprehending and understanding as they, and is quite as well established as the exception heretofore discussed. It is said in *Com.* v. *Sturtivant*, 117 Mass. 122, 19 Am. Rep. 401 : "The exception to the general rule that witnesses cannot give opinions is not confined to the evidence of experts testifying on subjects requiring special knowledge, skill, or learning, but includes the evidence of common observers, testifying to the results of their observation made at the time in regard to common appearances or facts, and a condition of things which cannot be reproduced and made palpable to a jury." Mr. Justice MITCHELL, in *Graham* v. *Pennsylvania Co.*, 139 Pa. St. 158, (21 Atl. 151, 12 L. R. A. 298) says : "That the opinions of witnesses are in some cases admissible as evidence, even when not coming properly under the head of expert testimony, has long been established in practice." Further on he asserts that the cases which support the doctrine "may be said not only to have become legion, but legion against legion," which would indicate that in his opinion their application has become confusing, while the principle is always recognized. There are several reasons assigned which characterize its competency, among which may be enumerated its necessity as being the only method of

proving certain facts essential to the due and proper administration of justice; that it is not a mere opinion, but a conclusion of fact to which the judgment and common knowledge of the observer has led him in regard to the subject matter; and that certain facts are of such a nature that whatever a witness may affirm touching them he asserts largely as an opinion, but so blended with knowledge and recollection that the line where opinion ends and fact begins cannot be distinguished, making it, in effect, a compound question of fact and opinion.

The conditions which attend its admissibility are that the opinion shall be given in connection with a narration of the facts and circumstances upon which it is based, so far as it is practicable, that the necessity for its expression may be made apparent, as well as an aid to the jury in determining what weight ought to be given it; and the facts which form the basis of the opinion must be such as are within the common understanding of persons in general, without special skill or knowledge. A practicable statement of the rule, or, rather, the exception, is as follows : Where the witness has had the means of personal observation, and the facts and circumstances which led the mind of the witness to a conclusion are incapable of being detailed and described so as to enable anyone but the observer himself to form an intelligent conclusion from them, the witness may be allowed to add his opinion or the conclusion of his mind. This is, in effect, the holding in *Town of Cavendish* v. *Town of Troy*, 41 Vt. 99. In further support thereof, see Underh. Ev. 268, 269; *People* v. *Hopt*, 4 Utah, 247-253, ( 9 Pac. 407 ) ; *Underwood* v. *Waldron*, 33 Mich. 232 ; *Porter* v. *Pequonnoc Manufacturing Co.*, 17 Conn. 249 ; *Clinton* v. *Howard*, 42 Conn. 294-306 ; *State* v. *Folwell*, 14 Kan. 105-110 ; *Yahn* v. *City of Ottumwa* ( Iowa ) 22 Am. Law. Reg. ( N. S.) 644, and extended

note by Lawson ( s. c. 15 N. W. 257 ); *Sears* v. *Seattle St. Railway Co.*, 6 Wash. 227, ( 33 Pac. 389, 1081 ); *Innis* v. *The Senator*, 4 Cal. 5 ( 60 Am. Dec. 577 ); *City of Indianapolis* v. *Huffer*, 30 Ind. 235 ; *Stewart* v. *State*, 19 Ohio, 302 ( 53 Am. Dec. 426 ).

3. The witnesses were regarded by the court below as skilled firemen, and were permitted to testify as competent experts concerning matters falling within the line of their vocation.   In so far as the action of the trial court is disclosed by the record, it finds support in *Pendleton* v. *Saunders*, 19 Or. 9 (24 Pac. 506), and in the discussion contained in the opinion touching who are experts, competent to testify as such.   These witnesses were able, perhaps, to describe the phenomenon in a general way, as it was impressed upon their senses by observation ( that is, as it appeared to them at the time ), and yet they believed it was not burning naturally upon the combustibles known to have been contained in the store. They described it as intense, burning fiercely everywhere, both upstairs and down, the flame pouring out of all the doors and windows, etc.; but it was impracticable for them to denote the degrees of intensity which would attend fires burning upon substances of different degrees of inflammability.   It was the theory of defendants that some inflammable drug or substance had been distributed about over the goods, which greatly accelerated their burning, and this was a circumstance which was for the consideration of the jury in their determination of the question whether either of the partners set or caused fire to be set to the stock.   The only available evidence by which to determine that supposed fact was the manner in which the fire burned, and the effort was to produce a like effect upon the jury as the phenomenon produced upon the onlookers, who were in a condition and capacitated to acquire a knowledge thereof.   We have a case,

therefore, not of unskilled, but of skilled, observers narrating the facts so far as they were able, and giving their impressions concerning them. In our opinion, the rule governing as to the first classification is aptly stated by EARL, J., in *Ferguson* v. *Hubbell*, 97 N. Y. 507 (49 Am. Rep. 544). He says: "Opinions are also allowed in some cases where from the nature of the matter under investigation, the facts cannot be adequately placed before the jury so as to impress their minds as they impress the mind of a competent, skilled observer, and where the facts cannot be stated or described in such language as will enable persons not eyewitnesses to form an accurate judgment in regard to them,—no better evidence than such opinion is attainable."

In *Stewart* v. *State*, 19 Ohio 302 (53 Am. Dec. 426), it is said that questions of time, quantity, number, dimension, height, speed, distance, and the like, are issues concerning which it is. proper to take the opinion of witnesses ; and in *State* v. *Folwell*, 14 Kan. 105, it was held that duration, distance, dimension, velocity, etc., are often to be proved only by the opinions of witnesses, depending as they do on many minute circumstances, which are not susceptible of being fully and intelligently detailed. In *Clifford* v. *Richardson*, 18 Vt. 620, the court say: "It often happens that the triors are not qualified, from experience in the ordinary affairs of life, duly to appreciate all the material facts, when proved. Under these circumstances, the opinions of witneses must of necessity, be received." The case of *Improvement Co.* v. *Coon*, 10 Wkly. Notes Cas. 502, cited in *Graham* v. *Pennsylvania Co.*, is much in point, wherein it seems to have been held that the opinions of witnesses as to the violence and unusual character of a storm were certainly necessary to supplement their descriptions. All the elements would seem to concur in making the opinions of the witnesses

above named, skilled as they were considered to be by
the court below, competent to express an opinion touch-
ing the question whether the fire was burning naturally
and alone upon the combustibles known to have been con-
tained in the store.   The jurors cannot be presumed to
have known as much touching the characteristics of fires
as those who have had much experience and training
in extinguishing them, and who have had occasion to ob-
serve many of them, with a knowledge of the substance
which gives them action.   It was not a question of whether
the fire was of an incendiary origin, respecting which the
opinions of the witnesses were called, for that was the
ultimate question, but whether the fire was burning nat-
urally upon the known substance it had to feed upon,
and we think such opinion evidence was competent.

4. The questions whether the fire could have spread
to the upper floor in so short a time, or whether it would
have generated sufficient explosive power to have blown
out the doors, etc., comprised in the second classification,
called for the opinions of experts, and were proper sub-
jects of inquiry, in the light of the surrounding facts and
circumstances.   Much of what has been said heretofore
touching the necessity for the species of testimony known
as "opinion evidence" is applicable here.

During the course of the trial, A. R. Ockerman, a
druggist of admitted capacity, was asked whether there
existed fluids or solids of an inflammable nature, capable
of being disposed of over a stock of goods such as was
carried by H. Wolf & Brother, which would produce no
odor in burning, to which objection was made upon the
ground that no testimony had been introduced to show
that any such material had been used, upon which to
base the question.   The bill of exceptions does not indi-
cate what had or had not been shown touching the sub-

ject, except as reference may be made to the testimony of Campbell, Laudenklos, Austin, and Wemple. But the summary of their testimony seems to have been given only for the purpose of testing the propriety of certain questions put to them, which have been heretofore discussed, so that we cannot say whether the point was well taken or not. If reference is made, however, to the testimony which is attached to the bill of exceptions, it will be found that the court below overruled the objection, upon his recollection that there was evidence in the record tending to show that no odor was emitted or perceptible from the burning substance.

5. Another assignment is stated thus : "It being admitted by the pleadings that H. Wolf & Brother sustained a loss of $31,174.73, being $3,174.73 in excess of the amount of insurance had by H. Wolf & Brother thereon, it was error for the court to admit evidence depreciating the value of the stock." The question arose upon the testimony of S. Friedman, which was to the effect that he had examined the stock ; that two-fifths of it was good stock, worth 100 cents on the dollar, and three-fifths of it was old stock. The purpose of this testimony was not to show that H. Wolf & Brother had not suffered loss to the amount admitted by the pleadings, but to show the nature of the stock on hand,—whether it was a desirable one or not,—in order to establish a motive in the owners for its destruction. It was a circumstance of some bearing upon the alleged fraud, and was not improperly admitted.

6. The next question presented is whether the court should have instructed the jury, in compliance with plaintiff's motion interposed at the close of defendants' case, to return a verdict for plaintiff in the amount

prayed for, upon the ground that no evidence had been adduced connecting H. Wolf & Bro. with the burning of their stock. That there was no direct evidence of the explicit fact of firing the goods, implicating the proprietors, none can gainsay; but the question here is whether there was any evidence, direct or circumstantial, sufficient to go to the jury, from which they could fairly infer the fact at issue. If so, the question was for the jury, and the court could not invade its province by directing them to bring in a certain kind of verdict. There was testimony to the following effect: Marcus Wolf, one of the proprietors, and Jake Wolf, a son of the other coproprietor, had been about the store all day. Jake left, to go to his home, at about 5:45 or 5:50 p. m., and Marcus and the bookkeeper about a quarter of an hour thereafter, the bookkeeper locking the store as they went out. Within five minutes after their departure the store was discovered to be on fire in both stories, and almost immediately the iron doors and shutters on the lower floor burst out, with an explosion, and the window lights in all the doors and windows were broken, and the fire burned with unusual fury. Immediately after it had been extinguished, Marcus Wolf telegraped to his brother Harry, who was then in New York for the purpose of replenishing their stock: "Store burned up. Total loss. Stop buying. Come home." For the purpose of showing a motive, evidence was adduced tending to show that the stock of goods on hand was in some respects unsalable and undesirable, that times were somewhat depressing, and that they were financially involved to the extent of some $50,000. These references indicate the most marked characteristics of the testimony, while there was much more having the same tendency. This testimony was pertinent to go to the jury, and was of a character from which they might infer, as they did, that the fire

was of incendiary origin, and that Marcus Wolf was responsible for its inception. It is not for us to say what we would have done if we had been sitting as jurors, but to determine whether there was any evidence competent to go to the jury, and from which the jury might have drawn the inference evidenced by their verdict. Mr. Justice WOODS, in *Bayly* v. *London Insurance Co.*, 2 Fed. Cas. 1087 (a case of similar import), says: "Even were I convinced that the proof sustained the charge, it would not be my province to set aside the verdict of the jury because I disagreed with them." In support of the view we here entertain see *Wallace* v. *Suburban Railway Co.*, 26 Or. 174 (37 Pac. 477); *Van Bebber* v. *Plunkett*, 26 Or. 562 (38 Pac. 707); and *State* v. *Pomeroy*, 30 Or. 16 (46 Pac. 797).

7. As a preliminary to the court's instructions to the jury, it made use of the following language: "The counsel almost entirely agree, the one with the other, as to what is the law in the case. Counsel for the defendant has presented certain written instructions which he desires shall be given to the jury. These instructions I have considered, and they seem to me to embrace the law of the case. I will therefore read these instructions, and you will consider them your guide in regard to the matters referred to therein." Objection is made to the latter clause, as giving undue prominence to defendants' case, at the expense of plaintiff's legal rights. We do not think the language is susceptible of that interpretation, as it was merely employed as introductory to the rendering of the instructions drafted by defendants' counsel.

8. The court further instructed the jury, among other things, as follows: "In deciding upon the issues in this case, the jury must take into account every fact and in-

cident detailed in the evidence before them, and decide according to what is considered the most probable conclusion.   The rule in civil cases, like the present, is different from what it is in criminal cases.   In criminal cases the question is as to the guilt or innocence of crime, and there the jury must be satisfied that the offense was committed, beyond a reasonable doubt, by the person accused.   In criminal cases, if any reasonable doubt remains in the minds of the jury they are bound to give the accused the benefit of such doubt.   But in civil cases, like the present, there is no question whether any crime has been committed.   If there are any criminal charges to be made in connection with this fire, they are examinable in another department of this court, and you have nothing to do with them.   I may add here that the verdict in this case, in whose favor or benefit it may be given, can never be used in any criminal proceeding elsewhere against these parties, if there should be any such proceeding instituted.''   Exceptions were taken to excerpts from this charge, viz.:  (a) '' But in civil cases, like the present, there is no question whether any crime has been committed '';  (b) ''if there are any criminal charges to be made in connection with this fire, they are examinable in another department of this court '';  and (c), which goes to the last period of the general instruction just quoted.

It is insisted that, where the facts charged involve moral turpitude, there is a presumption of innocence, which stands as evidence in favor of the party charged, as well as a probability that a man will not commit a crime ; that such presumption is to be weighed in civil as well as in criminal cases ; and that there can be no preponderance of evidence against the party charged, unless the proof is sufficient to overcome this presumption, together with such other evidence that may have

been offered in support of the innocence of the accused. It is only the natural presumption of innocence, arising from the improbability that a person will commit a crime, not the statutory or legal presumption, which has probative force in civil cases, and this must be taken into consideration with all the other evidence bearing upon the question in determining on which side of the scales of justice the preponderance rests.      See *First Nat. Bank* v. *Commercial Union Assur. Co.*, and *First Nat. Bank* v. *Phœnix Assur. Co.* ( just decided ) 52 Pac. 1050.      It may have been proper for the court to have given an instruction in these cases similar to the one there given.      There was no request for it, however, and we are to determine whether the one given was erroneous.      The portion of the charge from the beginning down to and including the first excerpt seems to have been copied from a charge which has received the approval of the court in *Rothschild* v. *Insurance Co.*, 62 Mo. 356.      It must be construed, however, in connection with the whole instruction, and not considered as constituting a single charge within itself.      The other excerpts were given with a view to cautioning the jury against allowing the criminal phase of the controversy, or the possible results of any criminal charges that might be preferred against the parties, to influence their verdict in the civil action. These should also be read in connection with the whole charge, and, when so considered, it is highly probable that the jury fully understood its purpose.      We are unable to say that the instruction was harmful, and as such improperly given.

9.      Exceptions were also taken to certain characteristics of instruction numbered 4, such as the use of Marcus Wolf's name for the purpose of illustrating the meaning of "direct evidence," the use of the expression

"that it was of incendiary origin" to illustrate what is meant by indirect evidence, and the like, for the reason that they were calculated to attract undue attention to the alleged criminality of Marcus Wolf, and its bearing as a feature of the controversy. The instruction is not such a one as should be commended, but, notwithstanding, it states a correct rule of law, and the illustrations were not so peculiar or unwarrantable as to mislead or misdirect an intelligent jury. Seeing no error in the record, the judgment of the court below will be affirmed.

AFFIRMED.

Decided November 1, 1897.

ON MOTION TO STRIKE TRANSCRIPT OF TESTIMONY.

[50 Pac. 568.]

*Mr. Lewis B. Cox* for the motion.

*Mr. Henry E. McGinn contra.*

MR. CHIEF JUSTICE MOORE delivered the opinion.

This is a motion to strike from the record the transcript of the testimony. The facts material to the inquiry are that the First National Bank, as assignee of H. Wolf & Brother, commenced actions against the Fire Association of Philadelphia, and also against the Aachen & Munich Fire Insurance Company, to recover on account of a loss by fire claimed to have been sustained by its assignors under policies issued to them by said insurance companies. The answers, having admitted the material allegations of the complaints, set up an affirmative matter by way of defense; whereupon the trial court held that the burden of the proof was thereupon cast upon the defendants, and ordered the two causes consolidated for

trial, at which, after defendants had introduced their evidence and rested, counsel for plaintiff moved the court to instruct the jury to return a verdict for their client for the amount demanded in their respective complaints ; but, the motion being denied, an exception was saved, and judgment having been rendered against plaintiff for the costs and disbursements of the actions, which were dismissed, plaintiff appeals.

The bill of exceptions contains a synopsis of the important testimony introduced at the trial, and also the following recital :   " The entire testimony given in this trial before the court and jury is attached to this bill of exceptions, certified to by F. Harrison as special official reporter, marked ' Exhibit A,' and signed by the judge. It is from this transcript of the testimony that the bill of exceptions was made up, and should there be in the recital of the testimony herein any differences between this testimony and that found in the transcript, so marked ' Exhibit A,' as aforesaid, the testimony as set out in said transcript is to govern."   The judge also appended to the transcript of the testimony the following certificate :   " The testimony which follows herein, from page 1 to page 242, is all the testimony in the case of *The First National Bank* v. *The Aachen and Munich Fire Insurance Company*, and is all the testimony in the case of *The First National Bank* v. *The Fire Association of Philadelphia*, and is referred to in the bill of exceptions in each of said causes as ' Exhibit A,' and is attached to the bill of exceptions in the case of *The First National Bank* v. *The Fire Association of Philadelphia* only, but is an exhibit in both causes."

10.   One of the errors assigned in the notice of appeal is the refusal of the court to instruct the jury to return a verdict in plaintiff's favor for the amount demanded.  The

request so to instruct must, in effect, be regarded as equivalent to a demurrer to the evidence, and should be governed by the rules applicable to a motion for a judgment of nonsuit.

11. It has been repeatedly held by this court that the ruling of the court below denying a motion for a nonsuit will not be reviewed on appeal unless the bill of exceptions affirmatively shows that it contains all the evidence given at the trial by the party upon whom the *onus probandi* falls. *Woods* v. *Courtney*, 16 Or. 121 (17 Pac. 745) ; *Roberts* v. *Parrish*, 17 Or. 583 (22 Pac. 136) ; *Coffin* v. *Hutchinson*, 22 Or. 554 (30 Pac. 424) ; *Johnston* v. *Oregon Short Line Railway Co.*, 23 Or. 94 (31 Pac. 283) ; *Shmit* v. *Day*, 27 Or. 110 (39 Pac. 870) ; *Schaefer* v. *Stein*, 29 Or. 147 (45 Pac. 301). In the case at bar, the bill of exceptions proper doubtless contains a transcript of sufficient testimony to explain all the exceptions relied upon, except the request so to instruct the jury ;  and as to that, under the rule heretofore adopted, it was necessary that all the testimony given at the trial should be incorporated in the bill of exceptions, so that this court might be able to consider the questions which the lower court was called upon to decide. The bill of exceptions having been prepared in the prescribed manner, the motion to strike from the record the transcript of the testimony must be denied ;  and it is so ordered.

<div style="text-align:center">AFFIRMED :   MOTION OVERRULED.</div>