Argued October 25, reversed and remanded November 17, 1954

# BAILEY *v.* RHODES, ADMINISTRATOR

276 P2d 713

*Sam Van Vactor* argued the cause for appellant. On the brief were Brown & Van Vactor, of The Dalles.

*R. W. Nahstoll* argued the cause for respondent. On the brief were Eben & Nahstoll, of Portland, and Donald E. Heisler, of The Dalles.

Before LATOURETTE, Chief Justice,. and WARNER, LUSK, BRAND, TOOZE and PERRY, Justices.

TOOZE, J.

This is a damage action for personal injuries, brought pursuant to the provision of § 115-1001, OCLA (ORS 30.110), generally known as "the guest statute". It was commenced by Jack E. Bailey, as plaintiff against Ernest H. Rhodes, administrator of the estate of James A. Triplett, deceased, as defendant. The trial resulted in a verdict and judgment in favor of plaintiff in the sum of $15,000; defendant appeals.

This action is brought against the personal representative of James A. Triplett, deceased, the alleged wrongdoer, as authorized by the provisions of § 8-904, OCLA, as amended by ch 519, Oregon Laws 1949. That statute provides that damages recoverable thereunder shall not exceed the sum of $15,000.

State highway 197, known as "The Dalles-California Highway", runs in a general northerly and southerly direction between Maupin and The Dalles, in Wasco county, Oregon. The highway at the point with which we are concerned has blacktop pavement 20 feet in width and a 20° left-hand curve (traveling north). On the outside of the curve there is a gravel shoulder 8 feet wide, and on the inside a ditch 2 feet in width. The accident out of which this litigation arose occurred on said highway near milepost 37, about a mile from Tygh Valley, in Wasco county. All the way from Maupin northerly to the scene of the accident the highway is crooked, with one curve after another, and is largely downgrade. All approaches to curves are marked by standard state highway curve-warning signs, including the curve where the accident took place. Also, at intervals along the highway embankment at this curve, were set concrete posts, 8 inches square, 5½ feet high, and painted white. The embankment below the curve in the highway is steep, for a distance of 30 feet being on a 65% grade; and from there on down for approximately 130 to 140 feet, on a 39% grade, and then on a 10% grade to where the land levels off.

On September 21, 1951, at about the hour of 11:30 p.m., plaintiff was riding as a guest in a Ford automobile owned and then and there being operated by James A. Triplett, now deceased. The car was proceeding in a northerly direction along said highway, enroute from Maupin to Tygh Valley. At the curve in the highway above mentioned, the automobile left the highway, knocking over one of the concrete white posts and plunging down and along the embankment for a distance of more than 500 feet, coming to rest standing on its four wheels, but almost completely demolished. Parts of the wrecked car and its contents were found

strewn along the path it traveled after leaving the highway. The body of James A. Triplett was found about 50 feet from the automobile. Triplett was dead. Plaintiff was found about 25 feet from the car, but was alive, though seriously injured. Plaintiff was unconscious and did not regain consciousness for a month thereafter. The wreck was discovered about 8:00 o'clock a.m. on September 22. There were no eyewitnesses to the accident. Plaintiff had no memory of the incidents immediately preceding the cash.

In his complaint plaintiff charged the decedent, James A. Triplett, with intoxication and gross negligence. Paragraph VI of the complaint reads as follows:

"At said time and place, and while so operating said automobile, James A. Triplett, now deceased, was intoxicated and he was then and there grossly negligent and operated said automobile in a reckless disregard of the rights of others, and in particular of this plaintiff, in that:

"(a) Said James A Triplett, now deceased, then and there operated said automobile at a high, dangerous and reckless rate of speed, greater than was reasonable and prudent, having due regard to the traffic, surface and width of the highway and other conditions then and there existing;

"(b) Said James A. Triplett, now deceased, then and there recklessly, and with gross negligence, failed and omitted to keep a proper look-out;

"(c) Said James A. Triplett, now deceased, then and there recklessly, and with gross negligence, operated said automobile without having or exercising proper control over said automobile;

"(d) Said James A. Triplett, now deceased, failed and omitted to drive said automobile upon the right half of the said Oregon Highway #23, but instead operated said automobile off from said highway and over the cliff of the bank adjacent to the shoulder thereof;".

Defendant denied the charge of intoxication and the several acts of negligence specified in plaintiff's complaint, and by the affirmative allegations of his answer charged plaintiff with contributory negligence as follows:

"That if it is determined at the trial of this case that the deceased James A. Triplett was guilty of operating the vehicle which he was driving at the time and place of the accident while intoxicated, as plaintiff alleges, the plaintiff was himself reckless, careless and negligent and was himself guilty of contributory negligence which proximately caused and contributed to his own injury and the happening of his accident, in that he knew or in the exercise of reasonable care would and should have known of the condition of the deceased James A. Triplett while he was operating his said vehicle, and when he with full knowledge of the condition of the said James A. Triplett, deceased, willingly rode in said vehicle as a guest and passenger of the deceased James A. Triplett."

In his second affirmative defense, defendant alleged as follows:

"That if it is determined at the trial of this case that the deceased James A. Triplett at the time and place of said accident was intoxicated, plaintiff was reckless, careless and negligent in riding with the defendant while defendant was in such condition, with full knowledge of the circumstances, and plaintiff assumed the risk and dangers of riding with defendant under the circumstances then exisisting [sic]."

By his reply plaintiff denied all the new matter alleged in defendant's answer.

Section 115-1001, OCLA (ORS 30.110), provides:

"No person transported by the owner or operator of a motor vehicle as his guest without payment

for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator or caused by his gross negligence or intoxication or his reckless disregard of the rights of others.''

The evidence in this case is undisputed that at the time of the accident plaintiff was riding in the Ford automobile as the guest of James A. Triplett, now deceased, within the meaning of the foregoing statute.

Prior to the accident both plaintiff and Triplett were employed by the firm of Dant & Russell, and were working at Dant, Oregon, about 13 miles from the town of Maupin. On the evening of September 21, 1951, after plaintiff and Triplett had finished their day's work, both left in Triplett's car for Maupin, where they arrived about 7:30 p.m. The parties first stopped at Elliott's Oasis, a tavern and auto court in Maupin. Plaintiff remained in the car for about half an hour while Triplett visited someone in one of the Oasis cabins. Upon Triplett's return to the car, both parties went into the tavern where each drank one or two bottles of beer during the period of the 30 to 45 minutes they remained therein. From the tavern, they drove to the Shell service station in Maupin, and were there about an hour. Triplett returned a borrowed tire. Plaintiff remained in the car while at the service station. The parties then visited the Rainbow cafe in Maupin. Bailey had a cup of coffee there, and Triplett left temporarily to get a bottle of whiskey. Upon Triplett's return, both Triplett and plaintiff drank three or four glasses of beer apiece, and there is some evidence to the effect that out of plaintiff's presence, Triplett drank some whiskey. However, the bartender at the

Rainbow cafe testified that neither plaintiff nor Triplett appeared to be intoxicated. Plaintiff left the Rainbow cafe and returned to the car, while Triplett remained in the cafe for an additional 15 or 20 minutes. Upon his return to the car, Triplett told plaintiff he had been drinking whiskey with some friends. They then went to the Riverside hotel. There Bailey had one 7-Up highball, and Triplett, two or three coke highballs. The bartender refused to serve plaintiff a second highball, because at the time he appeared to have "had enough". Bailey then went back to the car, Triplett remaining in the hotel bar. To the bartender at the Riverside, Triplett did not appear to be intoxicated, and plaintiff testified that at no time during the evening prior to the accident did Triplett appear to him to be intoxicated. From the Riverside hotel, the men started on the trip to Tygh Valley. Plaintiff recalled only the first two or three miles of that trip, which ended so disasterously.

■ There was ample evidence in the record from which the jury might find that Triplett was intoxicated. Moreover, the question of whether plaintiff knew, or by the exercise of due care on his part should and would have known, that Triplett was intoxicated when he entered and remained in the car on the trip toward Tygh Valley, was, under all the facts and circumstances of this case, a jury question.

■■ It is well established in this state that if a guest voluntarily rides in an automobile driven by one who he knows, or in the exercise of due care should know, is so intoxicated as to incapacitate him from safely and prudently driving it and under such condition proximately causes the accident, he is himself guilty of contributory negligence which will preclude his recovery of damages for any injuries he might sus-

tain. *Petersen v. Abrams and Leatham,* 188 Or 518, 523, 216 P2d 664; *Willoughby v. Driscoll,* 168 Or 187, 120 P2d 768, 121 P2d 917. In *Petersen v. Abrams and Leatham,* supra, we said:

> "A guest riding in an automobile, although not chargeable with the driver's negligence, is not absolved from all personal care for his own safety, but is under the duty of exercising such care as an ordinarily prudent person would exercise under like circumstances. Annotation, 63 A.L.R. 1432."

■ The intoxication of the guest himself, if he is intoxicated, is no excuse for a failure on his part, if there is such failure, to exercise that degree of care for his own safety that would have been exercised by a reasonably prudent person in like or similar circumstances, within the meaning of the rules above stated. See generally: *Adair, Adm'x. v. Valley Flying Service,* 196 Or 479, 250 P2d 104.

The term "intoxication", as used in the guest statute, is defined in *Glascock v. Anderson,* 198 Or 499, 507, 257 P2d 617.

■ Under the evidence in this case the trial court properly overruled defendant's motion for an involuntary nonsuit, and also defendant's motion for a directed verdict in his favor. There was substantial evidence from which the jury might, and evidently did, find that Triplett was intoxicated, and that he was also guilty of gross negligence in the respects alleged in the complaint. Plaintiff's alleged contributory negligence was also one of fact for jury determination.

However, the defendant assigns as error the admission of certain testimony by a state police officer.

At about 8:00 o'clock a.m., on September 22, 1951, Charles A. U'Ren, a sergeant of the Oregon state police, and stationed at The Dalles, received a call at his office

reporting the accident. He immediately proceeded to the scene of the accident, arriving there about 9:00 a.m. He made an investigation of the physical facts. As a witness, he described the curve in the highway, the shoulder and steep embankment, and from the marks made by the progress of the car from the highway to where it came to rest, pointed out where it left the highway and how it had gone over the embankment and rolled down the hillside for a distance of 556 feet; he described the debris and parts of the automobile found strewn along the path followed by the car; he told about the white cement post having been knocked over the bank, leaving a hole in the earth on the shoulder where it had been standing; he testified that there were no marks on the pavement, but that there was a mark on the shoulder where the car had gone off the road; he also identified photographs of the wrecked automobile, which photographs were admitted as evidence. His description of the physical facts was quite complete. Other witnesses testified to the same conditions. Thereupon, and as a part of his direct examination, the officer testified as follows:

"Q Now, Sargent [sic] U'Ren, you testified, I believe, that you had some 23 years of police experience and have you driven this particular stretch of road or highway from Maupin to Tygh Valley?

"A Yes.

"Q About how many times would you say you've been over that road?

"A I couldn't say. It's in this territory and I've been over it—I wouldn't attempt to say how many times, a large number of times.

"Q Of course you have driven a vehicle for many years, have you not, a car?

"A Yes; probably about 50,000 miles a year.

"Q And about how many motor vehicle accidents would you say that you have investigated over the years you've been a state police officer, sargent? [sic]

"A That would be hard to say; quite a sizable number.

"Q And you're familiar generally with the operator [sic] of motor vehicles and mechanical mechanisms and so forth, are you not?

"A Yes.

"Q Now, I ask you as an incident to your investigating experience are you familiar with the speed of vehicles?

"A Yes.

"Q Now, based upon what you saw there on your investigation of the facts and based upon your experience as a police officer, what if anything—what is your opinion of the speed of the vehicle?

"MR. VAN VACTOR: I'd like to interpose for the record an objection to that, Your Honor, in attempting to get from the witness a conclusion that should be left to the jury.

"THE COURT: I'll overrule the objection. He may answer it.

"A I would have to say that I would think the car was going at a very high rate of speed.

"Q And to bring it a little further. What would be your estimate of the speed in miles, expressed in miles per hour?

"MR. VAN VACTOR: I again wish to interpose for the record an objection for that, Your Honor; because he wouldn't be qualified to answer that question; no basis for that.

"THE COURT: The objection is overruled. I think he's qualified himself. Go ahead.

"A Possibly between 70 and 90 miles an hour."

Later in the trial the following proceedings occurred:

"MR. VAN VACTOR: At this time the defendant moves the court to strike from the record the

following questions and answers being a part of the testimony of the witness U'Ren. The question was:

" 'Now, based upon what you saw there, on your investigation of the facts and based upon your experience as a police officer, what if anything—what is your opinion of the speed of the vehicle?'

And then the answer:

" 'I would have to say that I would think the car was going at a very high rate of speed.'

" 'Q And to bring it a little further. What would be your estimate of the speed in miles, expressed in miles per hour?'

" 'A Possibly between 70 and 90 miles an hour.'

"MR. VAN VACTOR: May the record show that the defendant moved the court to strike the questions and answers just referred to from the record and to instruct the jury to disregard the question and answers upon the ground and for the reason that objection was timely made and the questions and answers were permitted over the defendant's objections that a proper foundation was not laid. That Officer U'Ren is not qualified as an expert; that the questions invaded the province of the jury; that there was not proper foundation laid for the opinion or testimony and that such testimony was incompetent, irrelevant and immaterial and that the matters of the markings in the road and the positions of the vehicles were matters which went solely to the weight of the evidence, was a question for the jury and that by permitting the officer to so testify it invaded the province of the jury.

"THE COURT: The motion is denied.

"MR. VAN VACTOR: May the record show that the defendant saves an exception to the ruling of the court in this respect?

"THE COURT: Yes; exception allowed."

██ The admission of this testimony constituted error, and, in our opinion, it was prejudicial error. The matter of speed of the automobile did not relate solely to specification (a) of paragraph VI of plaintiff's complaint, supra. For example, it was material to a consideration of the question of the alleged intoxication of Triplett: *Glascock v. Anderson,* supra; *Walker v. Penner,* 190 Or 542, 552, 227 P2d 316. In fact, the question of speed might be considerd in connection with the other specific allegations of negligence quoted above. Therefore, this testimony affected the entire case.

It is manifest that the testimony of the police officer that the car was traveling 70 to 90 miles per hour immediately prior to the accident necessarily amounted to pure speculation and conjecture on his part. That type of evidence is never admissible. Nevertheless, that statement by the witness, considering his position and long experience, would unquestionably have a decided effect upon the jury.

██ In every case, when the matter of speed is involved, the question primarily is not how fast the automobile was traveling in specific miles per hour, but rather whether its speed, whatever it may have been in miles per hour, was excessive under all the facts, circumstances, and conditions existing at the time. Competent and qualified eyewitnesses who have observed a motor vehicle in motion may give their opinion as to the rate of speed it was traveling, but one not an eyewitness cannot express an opinion, based solely upon the physical facts existing following an accident, as to the rate of speed prior to the accident. A jury is as well able to draw its own inferences and reach is own conclusions from the facts presented as is the witness. Such testimony invades the province of the jury.

In the instant case all facts upon which the police officer based his opinion were clearly presented by the evidence: the curve in the highway, the marks on the gravel shoulder, the knocking over of the cement post, the steep embankment down which the car ran and rolled, the character and locations of the debris and parts of the motor vehicle, the positions of the occupants of the car, the photographs showing the automobile's wrecked condition after it came to rest, and the distance it had traveled. From these facts, the jury was in a position to determine whether the car, immediately prior to the accident, was traveling at an excessive rate of speed under the circumstances; it did not need the assistance of an expert.

In *State v. Barrett*, 33 Or 194, 195, 54 P 807, Justice ROBERT S. BEAN discussed the admissibility of opinion evidence as follows:

"* * * As a general rule, a witness must testify to facts, and not conclusions or opinions. It is the duty of the jury, and not the witness, to draw inferences from the evidence, and form opinions from the facts presented. The cases in which the opinions of witnesses are allowed constitute exceptions to this rule, founded on the ground of necessity, because the facts cannot be presented or depicted to the jury precisely as they appeard to the witness, and it is impracticable, from the nature of the subject, for him to relate the facts without supplementing their description with his conclusions: First National Bank v. Fire Association, 33 Or. 172 (53 P. 8). Such are questions as to the identity of persons or things; the age, health, physical condition, and appearance of a person; the lapse of time; the dimensions and quantities of things; and many other instances in which the use of language which necessarily implies the conclusion or opinion of the witness: [Citing authorities]. But the books all agree that such opinion evidence is never admissible

if all the pertinent facts can be sufficiently described and detailed to the jury so as to enable it to draw its own inferences and conclusions therefrom: [Citing authorities].''

In *Everart v. Fischer,* 75 Or 316, 325, 145 P 33, 147 P 189, Mr. Justice BURNETT, in an exhaustive opinion, discussed the admissibility of opinion evidence, noting and quoting from a large number of our own decisions as well as decisions from other courts. Under the authority of that case, the evidence admitted in the instant case was not entitled to be admitted, and its admission constituted error.

See also: *Prauss v. Adamski,* 195 Or 1, 244 P2d 598; *Goodrich v. May et al.,* 121 Or 418, 255 P 464; *Cleasby v. Taylor,* 176 Wash 251, 28 P2d 795; *Warren v. Hynes,* 4 Wash2d 128, 102 P2d 691.

We note one other contention made by defendant. In his complaint the plaintiff alleges that he was damaged in the sum of $200,000. Defendant's motion to strike that allegation was overruled by the court. Under the statute which gives plaintiff his right of action against the personal representative of the alleged wrongdoer, the damages recoverable are expressly limited to the sum of $15,000. The allegation that plaintiff was damaged in the sum of $200,000 was an improper allegation and should have been stricken. Upon remand of this cause for a new trial, the trial court is directed to strike it.

The judgment is reversed and this cause remanded for a new trial.