Argued April 4, reversed and remanded April 26, 1972

LOOFBURROW, *Appellant, v.* FLYNN, *Respondent.*

496 P2d 220

*Nathan J. Heath,* Portland, argued the cause for

appellant. With him on the brief were Fredrickson, Heath, Weisensee, Barton & Cox, Portland.

*Frederick T. Smith,* Portland, argued the cause for respondent. With him on the brief were Dusenbery, Martin, Beatty, Bischoff & Templeton, Portland.

HOLMAN, J.

This is an action brought by a minor child, through his guardian ad litem, for personal injuries received when a bicycle he was riding was struck by an automobile operated by defendant. Plaintiff appealed from a judgment for defendant entered pursuant to an order of involuntary nonsuit granted at the completion of plaintiff's case. The only issue on appeal is whether there was sufficient evidence of defendant's negligence to submit to a jury.

Plaintiff was 14 years of age at the time of the accident. Immediately prior to the collision, he had been riding his bicycle from his home to a house where he was employed to cut the lawn. At the time of the accident he had traveled north on Green Tree Road near Lake Oswego to where the road enters the south side of South Shore Boulevard, making a "T" intersection. South Shore Boulevard runs east and west along the south shore of the lake. At the junction of these roads, a sign requires traffic going north on Green Tree Road to stop before entering South Shore Boulevard.

At the intersection the hard surfaced portion of South Shore Boulevard is approximately 25 feet in width. The hard surfaced portion of Green Tree Road fans out to at least 52 feet at the junction so that traffic turning in either direction on South Shore

Boulevard need not make an acute right angle turn. There was evidence that the center of the widened portion of Green Tree Road just off the south edge of South Shore Boulevard was covered with loose gravel lying in a triangular pattern. There was also evidence that visibility is impaired from Green Tree Road down South Shore Boulevard to the west (which was the direction from whence defendant came) because of vegetation at the southwest corner of the intersection.

Plaintiff stated that he stopped his bicycle in the triangular graveled area where its apex runs back into Green Tree Road. He then testified:

"Q. Did you make any observation the other direction, looking west?

"A. Yes. I looked west and there was a lot of vegetation in the way. I couldn't see.

"Q. Then what did you do?

"A. Well, I put my — I put my left foot up on the pedal which was in the up position at the time and I pushed it down, which barely made me going and I saw the defendant here coming in his car and so I had the intention of stopping to let it go by. So, I slammed on my brake. It was a foot brake and my right foot went down again on the brake and I slid in the gravel right in front of the car.

"Q. Do you recall being hit by the car?

"A. No. I just saw the car for a second, then everything went black.

"* * * * *.

"Q. About how fast were you traveling as you moved from this cinder area? Can you estimate that?

"A. About four or five miles an hour.

"Q. With only one half turn on the pedal and in those cinders you think you got going that fast?

"A. I don't know it was pretty slow. I couldn't tell you exactly.

"Q. Now, when you saw the car, did you think about putting your foot down, maybe, to stop?

"A. No. I just saw the car and slammed on my brakes and turned to the east a little bit, as I remember.

"Q. So, you turned to the right, up South Shore Road?

"A. Yes.

"Q. Going this direction?

"A. Yes.

"Q. Now, can you estimate how much of a distance there is in the cindered area?

"A. About fifteen feet.

"* * * * *.

"Q. Do you recall whether or not your bike was all in the cinders at the time you got hit?

"A. No. But, the road was freshly paved and there was loose gravel all over the surface of the road. Like it wasn't in a perfect triangle then it was kind of scattered through the intersection.

"* * * * *.

"Q. When you first saw the car where was it?

"A. I couldn't tell you. It was pretty close to the intersection, I guess."

The investigating officer testified that defendant's vehicle left skid marks of 68 feet 2 inches. He gave evidence by drawing a diagram from which it could be concluded that defendant's vehicle collided with plaintiff's bicycle after defendant's vehicle had skidded approximately 48 feet, and that it traveled approximately 30 feet beyond the end of the 68 feet 2 inches of skid marks before it came to rest.

In his complaint, plaintiff alleged defendant was negligent in speed, lookout, and control. The posted speed for South Shore Boulevard was 25 miles per hour. Plaintiff claims there was evidence of speed in excess of that posted because ORS 483.444① prescribes a stopping distance of 58 feet for an automobile traveling 25 miles per hour. Defendant contends that the statute is not applicable because it presumes a smooth, hard road surface. Here the evidence is that the surface was covered with loose gravel which would necessarily cause the stopping distance to be longer. Plaintiff counters by contending that pictures in evidence show that defendant was traveling uphill at the time of the accident.

■■ A speed within that posted is only presumptively lawful. Its lawfulness may be rebutted by a showing of circumstances indicating that a reasonably prudent person would be traveling at a lesser speed. Therefore, the ultimate fact to be determined is whether the basic rule had been violated. *McMullen v. Robinson,* 211 Or 531, 535, 316 P2d 503 (1957); *Bailey v.*

---

① "(1) Every motor vehicle other than a motorcycle when operated upon a highway shall be equipped with brakes adequate to control the movement of and to stop and to hold such vehicle, * * *.

"* * * * *.

"(4) All brakes shall be maintained in good working order and shall conform to the regulations set forth in subsection (5) of this section.

"(5) The brakes of a motor vehicle or combination of vehicles shall be deemed adequate when, on a dry, hard, approximately level stretch of highway, free from loose material, such brakes are capable of stopping the motor vehicle or combination of vehicles, when operating at speeds set forth in the following table, within the distances set opposite such speeds:

"Miles per Hour            Stopping Distance

"* * * * *

"25                       58.0

"* * * * *."

*Rhodes, Adm.,* 202 Or 511, 523, 276 P2d 713 (1954); *Rauw v. Huling and Sparks,* 199 Or 48, 56, 259 P2d 99 (1953). The basic rule, ORS 483.102, reads, in part, as follows:

> "No person shall drive a vehicle upon a highway at a speed greater than is reasonable and prudent, *having due regard to the* traffic, *surface* and width *of the highway, the hazard at intersections* and any other conditions then existing." (Emphasis added.)

If it is assumed that defendant put his foot to the brake as soon as plaintiff was visible and that defendant's vehicle traveled only 48 feet before hitting plaintiff, the jury could find that defendant's view of traffic entering South Shore Boulevard from Green Tree Road was substantially impaired. If the view was impaired and stopping conditions were also impaired by loose gravel, it is the court's opinion that the jury could have found that defendant was traveling at a speed which was excessive, considering the circumstances then existing, whether or not he was traveling within the posted speed.

The judgment of the trial court is reversed and the case is remanded for a new trial.

HOWELL, J., dissents.